• Michael Joseph Bien
• on or about the 7th day of December 2012,
• in Brown County
• with intent that capital murder, a capital felony, be committed
• did request, command, or attempt to induce
• Stephen Reynolds
• to engage in specific conduct
• to-wit: kill Koh Box
• for remuneration, and
• that under the circumstances surrounding the conduct of the defendant or Stephen Reynolds, as the defendant believed them to be, would have constituted capital murder.[15]
The allegations in the indictment for attempted capital murder are:
• Michael Joseph Bien
• on or about the 7th day of December, 2012
• in Brown County
• with the specific intent to commit the offense of capital murder of Koh Box
• did do an act
• to-wit: employ Stephen Reynolds
• by remuneration or the promise of remuneration
• which amounted to more than mere preparation
• that tended but failed to effect the commission of the offense intended.[16]
As the court of appeals noted, to make its attempt case, the State was required to prove that Appellant actually employed Reynolds to kill Box rather than just requesting that he do so.[17] To make its solicitation case, the State was required to prove that Appellant intended that Reynolds commit capital murder by killing Box and that under the circumstances as Appellant believed them to be, killing Box would constitute capital murder.[18]
To determine whether an offense qualifies as a lesser-included offense, we employ the cognate-pleadings approach.[19] Under this approach, elements of a lesser-included offense do not have to be *186 pleaded in the indictment if they can be deduced from the facts alleged in the indictment.[20] In such situations, the functional-equivalence concept can be employed in the lesser-included-offense analysis.[21] When utilizing functional equivalence, the court examines the elements of the lesser offense and decides whether they are "functionally the same or less than those required to prove the charged offense."[22]
Here, the act alleged as amounting to "more than mere preparation" under the criminal attempt indictment was the employment of Reynolds to kill Koh Box. This was the same act alleged in the criminal solicitation indictment. To the extent that criminal attempt required a showing of an employment agreement, the act of soliciting that employment in the criminal solicitation indictment was subsumed within the elements necessary to prove criminal attempt under these indictments.
Similarly, both indictments required proof of the intent to commit the offense of capital murder. Criminal solicitation carries with it the requirement that the State prove Appellant believed the conduct he was soliciting would constitute capital murder. Under the pleadings in this case, the State was required to prove that Appellant believed the conduct he was soliciting constituted capital murder. But this element was also subsumed within the greater proof in both offenses that Appellant intended that Reynolds commit capital murder. In this regard the "belief in the circumstances surrounding the conduct" aspect of criminal solicitation is the functional equivalent of the intent to commit capital murder in attempted capital murder.
Finally, the criminal solicitation indictment also required proof that, under the circumstances as Appellant believed them to be, the conduct solicited actually would constitute capital murder.[23] Arguably, this would require the State to prove that the offense solicited was not legally impossible, as the statute could be read to require proof of what the actor intends, but also proof that the circumstances surrounding the conduct the actor intends actually constitutes a criminal offense.[24] As we have explained, legal impossibility exists where the act, if completed, would not be a crime, although what the actor intends to accomplish would be a crime.[25]
*187 Nevertheless, it has been previously argued that the doctrine of impossibility should not be a defense under the Texas Penal Code.[26] And though we have recognized that the common-law defense of legal impossibility is valid defense, we do not appear to have ever applied it.[27]
A natural reading of the text leads us to the conclusion that the State proves the offense of criminal solicitation by proving what a defendant believes the circumstances to be surrounding the solicited conduct and that such conduct would be a crime under those circumstances. The statute does not require the State to prove that those circumstances actually exist. We hold that this element of criminal solicitation was also subsumed within the proof necessary to establish the intent to commit capital murder under the attempted capital murder indictment. Consequently, we reject the court of appeals' determination that under the pleadings in this case, attempted capital murder and solicitation of capital murder were not the same offense under Blockburger .[28]
IV. The Blockburger Rule Controls Here Because There Is No Clearly Expressed Legislative Intent to Impose Multiple Punishments
As the court of appeals held, "the offense of attempted capital murder requires proof that Appellant solicited Stephen Reynolds to kill Koh Box."[29] The State points out that the Supreme Court held in Garrett v. United States that, " 'There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction.' "[30] But the Court also noted in that case that, "We have recently indicated that the Blockburger rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history."[31] This is reflected in Benson , where we held that, if two offenses are the same under the Texas Blockburger test, then a judicial presumption arises that the offenses are the same for purposes of double jeopardy and a defendant may not be punished for both absent "a clearly expressed legislative intent to impose multiple punishments."[32]
That intent is not clear here. There is no express provision that a person who is subject to prosecution for criminal solicitation and criminal attempt may be prosecuted under either or both sections.[33] Nothing clearly indicates a legislative intent to impose multiple punishments.[34]
*188 Though we arrive at the same location by a different path, we ultimately agree with the court of appeals that Appellant was convicted in a single criminal trial of two offenses that are considered the same for double jeopardy purposes.
V. The Appropriate Remedy is to Vacate the Conviction the State Chooses
When a defendant is convicted in a single criminal trial of two offenses that are considered the same for double jeopardy purposes, the remedy is to vacate one of the convictions. In Landers v. State , we set out the "most serious punishment" test for determining which of the same offenses in the double jeopardy context should be retained.[35] The determination of the "most serious punishment" we said, is "the longest sentence imposed, with rules of parole eligibility and good time serving as a tiebreaker."[36] In Ex parte Cavazos , we eschewed those rules-based tiebreakers and established the "most serious offense" test.[37] The "most serious offense" is the offense of conviction for which the "greatest sentence was assessed."[38] There, the tiebreaker was the fact that restitution had been imposed for only one of the offenses.[39] In Villanueva v. State , we revived parole eligibility as a factor by retaining the one conviction which included a deadly weapon finding.[40] Other tie breakers that have been used in the past include degree of felony,[41] first-indicted,[42] and offense named first in the judgment.[43]
In Almaguer v. State , the Corpus Christi Court of Appeals-faced with a situation in which no tie-breaker worked-followed the suggestion of Presiding Judge Keller in Bigon and remanded the case so that the prosecution could elect the offense of conviction.[44] The court cited this passage from the dissent:
Although I authored Landers , the practical impossibility of determining in some cases which offense is really the most serious has convinced me that it would be preferable to simply give the local prosecutor the option to choose which conviction to retain. Making the matter a function of prosecutorial discretion seems to be most consistent with our prior recognition that a prosecutor in this type of situation is entitled to "submit both offenses to the jury for consideration" and receive "the benefit of the most serious punishment obtained." If a subjective decision is to be made, let the local prosecutor who exercised the decision to bring the case make *189 it.[45]
We here do likewise-this is a question to be answered by the prosecutor. Here, the prosecutor has requested that the 3g offense-the criminal solicitation conviction-be retained. This is the offense that was upheld by the court of appeals. We affirm the court of appeals' judgment in whole.
Yeary, J., filed a dissenting opinion.
DISSENTING OPINION
When the same act or conduct violates more than one statutorily defined penal offense, in order to determine whether punishment for both statutorily defined offenses violates double jeopardy, we have said that an "elements" analysis is appropriate.[1] This is the so-called Blockburger /cognate-pleadings approach to double jeopardy analysis, upon which we expounded at length several years back in Ex parte Benson , 459 S.W.3d 67, 72 (Tex. Crim. App. 2015). In this case, both indictments alleged that, "on or about the 7th day of December, 2012," Appellant committed certain conduct in recruiting Stephen Reynolds to commit murder for remuneration. Thus, on their faces, the indictments seem to allege that the same act or conduct simultaneously violated both the Penal Code proscription against criminal solicitation of capital murder and the separate Penal Code proscription against criminal attempt to commit capital murder.[2] It is therefore understandable that both the court of appeals,[3] and now this Court,[4] have approached the question as simply a matter of whether, under Benson 's "elements" approach, Appellant could be punished for both of these statutorily defined offenses without violating double jeopardy protections.
But the double jeopardy analysis in this case does not end there. Here, the evidence shows that Appellant engaged in conduct on two discrete occasions whereby he approached Stephen Reynolds in an attempt to engage him to commit murder for remuneration: first on December 1, 2012 (which was "on or about the 7th of December, 2012"),[5] and then again on December 7, 2012. It is at least arguable that the double jeopardy issue in this case is not fully governed by the Blockburger /cognate pleadings "elements" approach; that there is a "units of prosecution" component to the double jeopardy analysis that must be addressed as well.[6] "When two distinct *190 statutory provisions are at issue, the offenses must be considered the same under both an 'elements' analysis and a 'units [of prosecution]' analysis for a double jeopardy violation to occur." Benson , 459 S.W.3d at 71. A jury in this case might rationally have found that Appellant committed criminal solicitation of capital murder, during his December 1st meeting with Reynolds, and also that he separately committed the offense of attempted capital murder when, on December 7th, he made a down payment for services rendered and obtained a commitment from Reynolds to carry out the offense. I do not think the double jeopardy issue is fully resolved until this possibility is explored.
For that reason, the Court errs to affirm the judgment of the court of appeals on an "elements" analysis alone. I would remand the cause for the court of appeals to conduct a "units of prosecution" analysis. Because the parties have yet to brief that facet of the double jeopardy analysis, I would invite the court of appeals to solicit additional briefing. Instead, the Court simply affirms the lower court's judgment, to which I respectfully dissent.

Bien , 530 S.W.3d at 181.

Id.

Id. at 181-82.

Tex. Pen. Code. § 15.03.

State v. Meru , 414 S.W.3d 159, 162 (Tex. Crim. App. 2013).

Ex parte Watson , 306 S.W.3d 259, 273-74 (Tex. Crim. App. 2009) (opin. on reh'g).

McKithan v. State , 324 S.W.3d 582, 588 (Tex. Crim. App. 2010).

Id. (citing Farrakhan v. State , 247 S.W.3d 720, 722-23 (Tex. Crim. App. 2008) ).

TEX. PEN. CODE § 15.03 (a) ("A person commits an offense if, with intent that a capital felony or felony of the first degree be committed, he requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission.").

This stands in contrast to the offense of criminal attempt where it is immaterial whether the attempted crime is impossible to complete. Chen v. State , 42 S.W.3d 926, 930 (Tex. Crim. App. 2001).

Chen , 42 S.W.3d at 929. Cited examples of legal impossibility include attempt to receive stolen property that was not stolen, attempt to murder a corpse, attempt of a minor to commit rape, attempt to bribe a public official for purposes of securing a particular vote when the official had no authority to vote on the matter, and the attempt to bribe a person believed to be a juror when that person is not actually a juror. See Lawhorn v. State , 898 S.W.2d 886, 891 (Tex. Crim. App. 1995) (citing WAYNE R. LAFAVE, AUSTIN W. SCOTT, 2 SUBSTANTIVE CRIMINAL LAW § 6.3, at 46 (1986) ; CHARLES E. TORTIA, IV WHARTON'S CRIMINAL LAW § 747, at 581 (14th ed. 1981) ).

Lawhorn , 898 S.W.2d at 894 (Meyers, J., dissenting).

Chen , 42 S.W.3d at 929 ; see also Lawhorn , 898 S.W.2d at 894 (Meyers, J., dissenting) ("In fact, there are no Texas cases in the last 30 years that even allude to the doctrine of impossibility, let alone employ it to decide whether evidence of guilt is sufficient for conviction.").

Bien , 530 S.W.3d at 182 ("Under a strict application of the Blockburger test, the two offenses have differing elements and, therefore, would not be the same offense.").

Id. at 183.

State's Br. 6 (quoting Garrett v. United States , 471 U.S. 773, 779, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985) ).

Garrett, ids="6209354" index="37" url="https://cite.case.law/us/471/773/#p779">id.

Benson , 459 S.W.3d at 72.

Cf. Tex. Penal Code § 22.04(h) ("A person who is subject to prosecution under both this section and another section of this code may be prosecuted under either or both sections.").

We have previously held that solicitation was meant to capture conduct short of attempt. Schwenk v. State , 733 S.W.2d 142 (Tex. Crim. App. 1981) (opin. on reh'g) (citing Searcy and Patterson, "Practice Commentary," V.T.C.A., Penal Code, Section 15.03 ). We held that the solicitation statute was "designed to make conduct which does not rise to the level of attempt or conspiracy a criminal offense." Id. at 145.

Landers v. State , 957 S.W.2d 558 (Tex. Crim. App. 1997).

Id. at 560.

203 S.W.3d 333, 338 (Tex. Crim. App. 2006).

Id.

Id. at 338-39.

Villanueva v. State , 227 S.W.3d 744, 749 (Tex. Crim. App. 2007).

Berger v. State , 104 S.W.3d 199, 206 (Tex. App.-Austin 2003, no pet.).

Ruth v. State , No. 13-10-00250-CR, 2011 WL 3840503, at *8-9 (Tex. App.-Corpus Christi Aug. 29, 2011, no pet.) (not designated for publication).

Nickerson v. State , 69 S.W.3d 661, 671 (Tex. App.-Waco 2002, pet. ref'd).

492 S.W.3d 338, 348-49 (Tex. App.-Corpus Christi 2014, pet. ref'd).

Bigon , 252 S.W.3d at 374 (Keller, P.J., dissenting).

See Blockburger v. United States , 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ; Hall v. State , 225 S.W.3d 524, 532-33 & n.39 (Tex. Crim. App. 2007).

See Tex. Penal Code §§ 15.03(a) (criminal solicitation) & 15.01(a) (criminal attempt), respectively.

Bien v. State , 530 S.W.3d 177, 181-83 (Tex. App.-Eastland 2016).

Majority Opinion at 8-13.

See Sledge v. State , 953 S.W.2d 253, 256 (Tex. Crim. App. 1997) ("It is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period.").

In Benson , we observed:
Even when the offenses in question are prescribed by a single statute or are otherwise the same under an "elements" analysis , the protection against double jeopardy is not violated if the offenses constitute separate allowable units of prosecution. This latter inquiry involves determining such things as whether there were two murder victims, whether a victim who was assaulted on Monday was assaulted again on Tuesday , or whether multiple kinds of sex acts were committed against a victim. A "units" analysis consists of two parts: (1) what the allowable units of prosecution is, and (2) how many units have been shown . The first part of the analysis is purely a question of statutory construction and generally requires ascertaining the focus or gravamen of the offense. The second part requires an examination of the trial record, which can include the evidence presented at trial .
459 S.W.3d at 73-74 (emphasis added).