**Opinion issued June 18, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00279-CR

————————————

**MANYIEL PHILMON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 213th District Court**
**Tarrant County, Texas[1]**
**Trial Court Case No. 1477929D**

---

[1] The Texas Supreme Court transferred this appeal to this Court from the Court of Appeals for the Second District of Texas. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases between courts of appeals).

## OPINION

A jury convicted appellant, Manyiel Philmon, of aggravated assault with a deadly weapon ("Count 1") and assault of a family member, household member, or person with whom he had a dating relationship ("Count 2") and assessed punishment at two years' confinement and five years' confinement suspended with five years' community supervision, respectively. In four issues on appeal, appellant contends that (1) the conviction for dating-violence assault violates the double-jeopardy clause of the United States Constitution's Fifth Amendment; (2) the trial court abused its discretion in assessing a Crime Victim's Compensation Fee as a court cost; (3) he was unlawfully assessed duplicate court costs; and (4) the trial court erred when it allowed the State to cross-examine appellant with a question that assumed a fact not in evidence. We affirm the judgment in Count 1. We modify the judgment in Count 2, and, as modified, affirm.

## BACKGROUND

In September 2016, appellant began dating Evonne White. Eventually, he began spending most nights of the week at White's apartment. One morning, while appellant was still asleep, White looked through appellant's cell phone and discovered text messages showing that he had been unfaithful to her with other women.

White woke appellant and confronted him with her discovery. An argument ensued, and White told appellant to gather his belongings and leave her apartment. Appellant gathered his belongings, placed them near the center of White's apartment, and tried to light them on fire. When White told appellant that he was going to burn down the whole apartment, he pushed her onto an air mattress, took the battery out of her phone, and threw it across the room. He then threatened White with a metal bar from an exercise weight. Appellant also retrieved a gun and told White that he was going to pistol-whip her with it. Appellant then went into the kitchen and retrieved a kitchen knife and plastic storage bags. Appellant threatened White with a knife, then he wrapped the plastic bag around her head and attempted to suffocate her; in doing so he used his hands to constrict her throat and prevent her from breathing.

Appellant and White were both screaming during the altercations, and a neighbor eventually knocked on the door and called 9-1-1. When appellant answered the door, White pushed him out and locked the door. The police arrived, and appellant was arrested.

## DOUBLE JEOPARDY

In his first issue on appeal, appellant contends that "the conviction in Count Two for [dating-violence assault] violates the double jeopardy clause of the Fifth amendment."

3

*Applicable Law*

The Double Jeopardy Clause bars, among other things, multiple criminal punishments for the same offense. *See* U.S. CONST. amend. V; *Hudson v. United States*, 522 U.S. 93, 99 (1997). But, the Double Jeopardy Clause does not prohibit multiple punishments for the same conduct under two statutory provisions if this is what the legislature intended. *See Missouri v. Hunter*, 459 U.S. 359, 368–69 (1983) ("Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.").

We apply the usual test to determine whether the legislature intended multiple punishments for the same offense. *See Blockburger v. United States*, 284 U.S. 299 (1932). Under *Blockburger*, two offenses are not the same if "each provision requires proof of a fact which the other does not." *Id.*, 284 U.S. at 304. In Texas, we look to the pleadings to inform the *Blockburger* test. *Bien v. State*, 550 S.W.3d 180, 184 (Tex. Crim. App. 2018). If the two offenses have the same elements under the cognate-pleadings approach, then a judicial presumption arises that the offenses are the same for purposes of double jeopardy and the defendant may not be convicted of both offenses. *Id.* That presumption can be rebutted by a clearly expressed

legislative intent to create two separate offenses. *Id.* Conversely, if the two offenses, as pleaded, have different elements under the *Blockburger* test, the judicial presumption is that the offenses are different for double-jeopardy purposes and multiple punishments may be imposed. *Id.* at 184–85. This presumption can be rebutted by showing, through various factors, that the legislature clearly intended only one punishment. *Id.*

*Analysis*

In the first count of the indictment, the State charged appellant with aggravated assault with a deadly weapon. *See* TEX. PENAL CODE § 22.02(a)(2). The indictment for this offense alleged the following elements: (1) appellant, (2) intentionally or knowingly, (3) threatened imminent bodily injury to Evonne White, and (4) used or exhibited a deadly weapon, namely, a knife, or a metal bar, or a bag, or a metal object.

In the second count of the indictment, the State charged appellant with dating-violence assault by impeding the normal breathing or circulation of the blood of the person. *See* TEX. PENAL CODE § 22.01(a)(1), (b)(2)(B). The indictment for this offense alleged the following elements: (1) appellant, (2) intentionally, knowingly, or recklessly, (3) caused bodily injury to Evonne White, (4) by impeding the normal breathing or circulation of the blood of Evonne White by applying pressure to her

5

throat with his hand or arm, and (5) Evonne White was a member of appellant's family or household or a person with whom he had a dating relationship.

Here, the aggravated-assault-with-a-deadly-weapon charge required proof that appellant threatened Evonne White with bodily injury, while the dating-violence assault charge required an actual assault. Thus, the dating-violence assault charge is not a lesser-included offense of the aggravated assault charge because it is not established by proof of the same or less than all of the facts require to establish the aggravated assault. *See Childress v. State*, 285 S.W.3d 544, 549 (Tex. App.—Waco 2009, pet. ref'd) (holding dating-violence assault not lesser-included offense of aggravated assault because "the basis for the underlying assault—the threat of imminent bodily injury—is distinct from the basis for the dating violence assault, which was actual bodily injury").

Likewise, the aggravated-assault-with-a-deadly-weapon charge required proof that appellant used a deadly weapon, while the dating-violence assault did not. *Compare* TEX. PENAL CODE § 22.02(a)(2) with TEX. PENAL CODE § 22.01(b)(2)(B). And, the dating-violence assault required proof that Evonne White was in a dating relationship with appellant; the aggravated assault charge did not. *Id.*

Thus, after applying the *Blockburger* test, because the two offenses, as pleaded, have different elements, we presume that the charged offenses are not the

6

same offense for double-jeopardy purposes. *See Bien*, 550 S.W.3d at 185. We then must determine whether the legislature clearly intended only one punishment. *Id.*

Other (nonexclusive) considerations relevant to determining whether the legislature intended multiple punishments are: whether the offenses' provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are named similarly, whether the offenses have common punishment ranges, whether the offenses have a common focus (i.e., whether the "gravamen" of the offense is the same) and whether that common focus tends to indicate a single instance of conduct, whether the elements that differ between the offenses can be considered the "same" under an imputed theory of liability which would result in the offenses being considered the same under *Blockburger* (i.e. a liberalized *Blockburger* standard utilizing imputed elements), and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes. *Ervin v. State*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999).

The *Childress* case has discussed these factors, as applied to the same statutes, as follows:

> It is apparent to us that the legislature intended these two offenses to be treated separately. While they are in the same chapter of the Penal Code, they are separate and distinct statutes, and they are not phrased in the alternative. They do not have common punishment ranges. While they have a related focus—assaults—in this case there is no common focus between the two offenses. The dating violence assault focus is on

7

the bodily injury of a victim in a dating relationship with the defendant, while the focus of aggravated assault in this case is the assaultive conduct in the form of threatening imminent bodily injury with a deadly weapon. The threat of harm was being set on fire, while the harm actually suffered was bodily injury to [the complainant's] eyes and face from the gasoline.

The differing elements between dating violence assault and aggravated assault, as charged, cannot be considered the same under an imputed theory of liability. Dating violence assault, with its bodily injury element (which conceptually would be no different had [the defendant] hit [the complainant] in the face), is not similar to an imminent threat of bodily injury with a deadly weapon. Finally, neither [defendant] nor the State has provided us with any legislative history that might indicate whether or not the legislature intended to treat the offenses as the same or different for double-jeopardy purposes.

*Childress*, 285 S.W.3d at 550.

We agree with the Waco court's analysis. Additionally, we note that the gravamen of appellant's aggravated assault charge was threatening someone with bodily injury with a deadly weapon, here, a knife, a metal bar, a bag, or a metal object, while the gravamen of his dating-violence assault charge was actually causing bodily injury to a person with whom he was in a dating relationship by choking her with his hand or arm. Though the offenses may have occurred during the same criminal episode, we hold that they are not "the same offense" for purposes of the Double Jeopardy Clause. Thus, appellant could be tried and convicted on both counts. *See* TEX. PENAL CODE § 3.02(a) ("A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode.").

Accordingly, we overrule issue one.

8

**COURT COSTS**

The judgment in Count 1 includes an assessment of court costs in the amount of $319. The bill of costs attached to that judgment includes an assessment of $133 for "CCC-Felony" as a line item in the $319 total. It does not include a line item assessment of $45 pursuant to the Crime Victim's Compensation Act ["C.V.C.A."].

The judgment in Count 2 indicates that $0 costs are assessed, but the bill of costs attached to the judgment includes a line item assessment of $45 for "C.V.C.A."

In issues two and three, appellant challenges the total court costs assessed. Specifically, appellant contends that a $45 C.V.C.A. assessment is included within the $133 CCC-Felony assessment.

We begin by noting that court costs, as reflected in a certified bill of costs, need not be orally pronounced or incorporated by reference in the judgment to be effective. *See Weir v. State*, 278 S.W.3d 364, 367 (Tex. Crim. App. 2009). Thus, the fact that the $45 C.V.C.A. assessment was not incorporated into a judgment is irrelevant. Similarly, the fact that the $45 C.V.C.A. assessment is attached to Count 2 instead of Count 1 is irrelevant because "[i]n a single criminal action in which a defendant is convicted of two or more offenses . . . the court may assess each court cost or fee only once against the defendant." TEX. CODE CRIM. PROC. art. 102.073(a). Thus, the issue is not whether the $45 C.V.C.A. cost was improperly assessed in

Count 2 rather than Count 1, but whether it was assessed twice when considering both judgments together.

The State agrees that it was. *See Smith v. State*, No. 02-16-00412-CR, 2017 WL 2276751, at *2 (Tex. App.—Fort Worth May 25, 2017, pet. ref'd) (mem. op., not designated for publication) (holding that Crime Victim's Compensation Fee could not be assessed separately from $133 cost charged for felony conviction); *see also Aviles-Barroso v. State*, 477 S.W.3d 363, 388 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (holding same).

Accordingly, we sustain issues two and three. We modify the judgment in Count 2 to delete the $45 "C.V.C.A" assessment attached thereto because that cost is already included in the $133 CCC-Felony assessment in Count 1.

## ADMISSION OF EVIDENCE

During appellant's testimony, the following exchange took place:

Q: Okay. Do you think your memory could be at all affected by the fact that you were using cocaine or under the influence at the time this happened?

Defense Counsel: Judge, I'm going to object. There hasn't been any testimony—

Appellant: I—I

Trial Court: Excuse me. Hold on. Let him make his objection. Go ahead.

Defense Counsel: I'm going to object to any allusion to him using cocaine. There hasn't been any testimony about that.

The trial court overruled the objection.

In issue four, appellant contends that "[t]he trial court erred when it allowed the State to cross examine [a]ppellant regarding his cocaine use during the assault where such a question had no basis in fact."[2]

### *Standard of Review and Applicable Law*

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd, untimely filed). We will uphold the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016); *accord Walker*, 321 S.W.3d at 22. If the trial court's evidentiary ruling is reasonably supported by the record and correct on any theory of applicable law, we will uphold the decision. *See State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Tarley v. State*, 420 S.W.3d 204, 206 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

It is improper to cross-examine a witness with a question that assumes a fact not in evidence. *Ramirez v. State*, 815 S.W.2d 636, 652 (Tex. Crim. App. 1991); *see*

---

[2] We note that appellant did not object, either at trial or on appeal, that the evidence regarding cocaine usage was an inadmissible, extraneous offense.

11

*Duncan v. State*, 95 S.W.3d 669, 673 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

### *Analysis*

Thus, the issue is whether there was evidence of appellant's use of cocaine in evidence. The State argues that there was, and we agree.

During the complainant's testimony, which was before appellant testified, the following exchange took place when she was being questioned about whether appellant asked her to drop the charges:

> Q: Did [appellant] offer you any kind of explanation of why that happened on November 20th?
>
> A: He told me—because when we would have our arguments in the past, he—I would—I would say things like "Are you on drugs?" And he would get really upset. But then once he went to jail, that's when he told me, he was like, you know, when you used to always ask me if I was on drugs, well, yeah, I—I do—I experiment with cocaine or I snort cocaine and I was high that night.

Thus, there was evidence before the jury that appellant admitted to cocaine use the night before as a way to explain or justify his conduct on the morning of the offense in an effort to get White to drop the charges. As such, the trial court did not abuse its discretion in admitting the testimony.[3]

---

[3] To the extent that appellant is now complaining about the timing of his use of cocaine, i.e., that he used it the night before rather than during the offense, that issue is waived. Appellant objected that "there hasn't been any testimony about—cocaine and he's—stating it like it's a fact." He did not object regarding the timing of his use of cocaine, only that there was no evidence that he used it at all. He cannot

12

# CONCLUSION

We affirm the judgment in Count 1. We modify the judgment in Count 2, delete the assessment of $45 costs for C.V.C.A., and, as modified, we affirm.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Justice Goodman, concurring.

Publish. TEX. R. APP. P. 47.2(b).

---

object to the timing of his use of cocaine for the first time on appeal. *See* TEX. R. APP. P. 33.1(a).