

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0645-19

**MANYIEL PHILMON, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIRST COURT OF APPEALS
TARRANT COUNTY**

**KEASLER, J., filed a concurring opinion in which HERVEY, J. joined.**

## CONCURRING OPINION

We granted this petition to review the court of appeals' holding that aggravated assault by threatening with a deadly weapon[1] contains an element that family-violence assault by occlusion[2] does not: the use or exhibition of a deadly weapon. The court of

---

[1] TEX. PENAL CODE §§ 22.01(a)(2), 22.02(a)(2).

[2] *Id.* § 22.01(b)(2)(B).

appeals reached that conclusion in assessing, and ultimately rejecting, Appellant Manyiel Philmon's claim that trying and convicting him for both of these offenses violated his double-jeopardy rights.[3] Today, this Court agrees with the court of appeals that aggravated assault and assault by occlusion are different offenses for double-jeopardy purposes, and so affirms the lower court's judgment.

I agree that the court of appeals' judgment should be affirmed. Nevertheless, I am more than a little skeptical of the Court's claim that, in some circumstances, the hand or arm a person uses to impede someone's breathing needn't be considered a deadly weapon. The Court justifies this claim by making two observations. First, the Court (correctly) observes that we have interpreted Penal Code Sections 22.01(b)(2)(B) and 1.07(a)(8) to mean that any impediment to a person's normal breathing is *per se* a "bodily injury" in the context of an assault-by-occlusion prosecution.[4] Second, the Court (again correctly) observes that, for purposes of proving that something is a deadly weapon, evidence that the thing creates a mere "hypothetical potential for danger" will not suffice.[5] To be a deadly weapon, the thing must be capable of causing death or serious bodily injury "in the manner of its use or intended use."[6]

---

[3] *See Philmon v. State*, 580 S.W.3d 377, 381–83 (Tex. App.—Houston [1st Dist.] 2018).

[4] *See Marshall v. State*, 479 S.W.3d 840, 844 (Tex. Crim. App. 2016).

[5] *See, e.g.*, *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003).

[6] TEX. PENAL CODE § 1.07(a)(17)(B).

Tying these threads together, the Court reasons that an allegation that a defendant intentionally impeded another person's breathing is not necessarily indicative of deadly-weapon usage, because on its face, the allegation allows for the possibility of a *de minimis* impediment. If the facts showed that the actor imposed only a minimal obstruction, the Court says, the actor's hand would fail to satisfy the statutory criteria for a deadly weapon. That is because, if used in that manner, a hand would be incapable of causing death or serious bodily injury. The risk of death or serious bodily injury resulting from a slight blockage to a person's airway is, according to the Court, "hypothetical" at best.[7]

I am not so sure. To my mind, there is a credible argument that, regardless of the specific facts of the case, the risk of death or serious bodily injury resulting from manual breath impediment is more than just "hypothetical." After all, in this context, even if the actor intended only lightly to impede his victim's breathing, the slightest difference in pressure or duration from what the actor originally intended could make the difference between a full recovery and a catastrophic outcome. And as the Court itself recognizes, the statutory definition of a deadly weapon "does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury."[8] Given the narrowness of the margin for error here, it seems to me that when a person uses his hand or arm to intentionally obstruct another person's breathing, he has intended a use of his

---

[7] Majority Opinion at 8–9.

[8] *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

appendage that is arguably "capable" of seriously injuring or killing his victim, even if the actor makes a concerted effort to avoid those outcomes.[9]

Fortunately, there is another, less controversial way to resolve Philmon's double-jeopardy claim. As the court of appeals observed,[10] aggravated assault, at least as charged in this case,[11] contains yet another element that family-violence assault by occlusion does not: the element of threatening another with imminent bodily injury. This, coupled with the fact that family-violence assault by occlusion has at least one element that aggravated assault does not,[12] suffices to trigger the presumption that the Legislature intended to permit multiple punishments for these offenses.[13]

For this observation to be untrue, it would have to be the case that obstructing another person's breathing is, by its very nature, the functional equivalent of threatening that person with imminent bodily injury.[14] Admittedly, there are some fact scenarios in

---

[9] *See* Gael B. Strack & Casey Gwinn, *On the Edge of Homicide: Strangulation as a Prelude*, 26-FALL Crim. Just. 32 (2011) ("Most abusers do not strangle to kill—they strangle to show they *can* kill.") (emphasis in original).

[10] *See Philmon*, 580 S.W.3d at 381.

[11] *See Ex parte Benson*, 459 S.W.3d 67, 72 (Tex. Crim. App. 2015) (explaining that, in Texas, the "application of the *Blockburger* same-elements test . . . is governed by the cognate-pleadings approach, which entails comparing the elements of the greater offense as pleaded to the statutory elements of the lesser offense") (referencing *Blockburger v. United States*, 284 U.S. 299 (1932)).

[12] *See Philmon*, 580 S.W.3d at 381–82.

[13] *See, e.g.*, *Bien v. State*, 550 S.W.3d 180, 184–85 (Tex. Crim. App. 2018).

[14] *See id.* at 185–86 (describing the functional-equivalence test).

which, merely by obstructing another person's breathing, the actor has *ipso facto* threatened that person with imminent bodily injury.[15] But there are also some fact scenarios in which that is not the case. Consider the following set of facts: In the middle of the night, when his wife is asleep, a husband puts his hand over his wife's nose and mouth and intentionally impedes her breathing. But, despite her husband's actions, the wife does not wake up. Then, having a sudden change of heart, the husband removes his hand, and his wife goes right on sleeping, oblivious. In this scenario, the husband has undoubtedly committed family-violence assault by occlusion. But it is difficult to argue that he at any point threatened or even intended to threaten her with bodily injury. He did not threaten bodily injury—he inflicted bodily injury.[16] What this hypothetical case demonstrates is that, even if there is occasionally some overlap between these elements, they are not functionally equivalent to one another.

Once the presumption in favor of multiple punishments kicks in, the game is essentially over. Quoting extensively from an opinion by the Waco Court of Appeals, the courts of appeals ably explained why, in this case, the presumption should carry the day:

> It is apparent to us that the legislature intended these two offenses to be treated separately. While they are in the same chapter of the Penal Code, they are separate and distinct statutes, and they are not phrased in the alternative. They do not have common punishment ranges. While they have a related focus—assaults—in this case there is no common focus between the two offenses. The dating violence assault focus is on the bodily injury of a victim in a dating relationship with the defendant, while the focus of

---

[15] *See* note 9, *supra*.

[16] *See Marshall*, 479 S.W.3d at 844.

aggravated assault in this case is the assaultive conduct in the form of threatening imminent bodily injury with a deadly weapon. . . .

The differing elements between dating violence assault and aggravated assault, as charged, cannot be considered the same under an imputed theory of liability. Dating violence assault, with its bodily injury element . . . is not similar to an imminent threat of bodily injury with a deadly weapon. Finally, neither [defendant] nor the State has provided us with any legislative history that might indicate whether or not the legislature intended to treat the offenses as the same or different for double-jeopardy purposes.[17]

So, even if the court of appeals erred to suggest that family-violence assault by occlusion does not necessarily require proof of a deadly weapon, it correctly held, on a well-supported independent basis, that Philmon suffered no double-jeopardy violation. Even the Court concedes that this alternate basis is correct.[18] But if the Court really believes that to be the case, I do not know why the Court would persist in making the debatable (and ultimately unnecessary) claim that a hand or arm, used to impede another person's breathing, might fail to meet the "exceedingly broad" statutory criteria for a deadly weapon.[19] The Court needn't go that far to resolve the issue before us. For that reason, I would either affirm the court of appeals solely on the grounds outlined in this concurrence, or else dismiss this petition as improvidently granted. Because the Court does neither, I respectfully concur in the Court's judgment.

Filed: October 21, 2020

---

[17] *Philmon*, 580 S.W.3d at 382 (quoting *Childress v. State*, 285 S.W.3d 544, 550 (Tex. App.—Waco 2009)).

[18] Majority Opinion at 11–12.

[19] *See Prichard v. State*, 533 S.W.3d 315, 320 (Tex. Crim. App. 2017).

Publish