

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0645-19

### MANYIEL PHILMON, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### TARRANT COUNTY

WALKER, J., delivered the opinion of the Court in which KELLER, P.J., and RICHARDSON, NEWELL, KEEL, and SLAUGHTER, JJ., joined. KEASLER, J., filed a concurring opinion in which HERVEY, J., joined. YEARY, J., concurred in the result.

### O P I N I O N

Appellant was convicted of and sentenced for aggravated assault with a deadly weapon and family-violence assault. On appeal, Appellant argued that a conviction and sentence for both offenses violated his right against double jeopardy. The court of appeals disagreed and affirmed the trial court's judgment on this issue. We granted Appellant's petition to determine whether the court of appeals was correct in ruling that Appellant was properly convicted of and sentenced for both counts. Because each offense required proof of an element the other offense did not and a showing cannot

be made that the Legislature clearly intended only one punishment for these two offenses, we affirm the court of appeals on this issue.

## I — Background

In 2016, Appellant and Evonne White began dating. One morning, after Appellant stayed the night with White, White went through Appellant's phone and discovered Appellant had been unfaithful. White subsequently confronted Appellant about her discovery, and the two began fighting. During the altercation, Appellant gathered some clothing in the center of the room and tried to light it on fire. After White told Appellant that he was going to burn the whole apartment down, Appellant pushed White onto a mattress, removed the battery from her phone, and threw the phone across the room. Next, he threatened her with a metal bar, telling her "Bitch, I don't give a fuck about you right now. I'm going to beat the shit out of you." Then, he grabbed a gun, waved it in her face, and threatened to "pistol-whip" her. Then, Appellant went to the kitchen and retrieved a knife and some plastic kitchen bags. He threatened her with the knife and wrapped a plastic bag around her head and attempted to suffocate her by raising the bag and constricting her breathing. A neighbor heard White screaming and called the police. Consequently, Appellant was arrested.

## I(A) — Trial

Appellant's indictment included two counts. Count one alleged aggravated assault with a deadly weapon under Texas Penal Code § 22.02(a)(2). This count contained four paragraphs, each of which specified a different deadly weapon, including a knife, a metal bar, a bag, and a metal object. Count two alleged family-violence assault by impeding breathing or circulation under Texas Penal Code § 22.01(b)(2)(B). Appellant was convicted and sentenced for both counts.

## I(B) — Appeal

Appellant appealed his convictions and sentences, claiming, among other things, that they violated his right against double jeopardy. The court of appeals concluded that both offenses had at least one element that the other did not and, even though the offenses occurred during the same criminal episode, they did not constitute the same offense for purposes of the protection against double jeopardy. Accordingly, the court of appeals affirmed the trial court's judgment on this issue.

## II — Double Jeopardy

Appellant, maintaining that his right against double jeopardy was violated, now asks us to review the court of appeals's decision. Specifically, Appellant claims that, because count one can be proved by the same facts needed to support count two, they are the same offense for purposes of double jeopardy.

## II(A) — Applicable Law

The Fifth Amendment's Double Jeopardy Clause offers protection against multiple prosecutions and multiple punishments for the same offense.[1] To determine whether two offenses are the "same offense" for purposes of double jeopardy, we apply the "same-elements" test, as set forth in *Blockburger v. United States*.[2] Under the "same-elements" test, "two offenses are not the same if 'each provision requires proof of a fact which the other does not.'"[3] Additionally, the Supreme Court has long held that simply because an individual engaged in only one "culpable act,"

---

[1] U.S. CONST. amend. V.

[2] *Bien v. State*, 550 S.W.3d 180, 184 (Tex. Crim. App. 2018); *Blockburger v. United States*, 284 U.S. 299 (1932).

[3] *Bien*, 550 S.W.3d at 184 (quoting *Blockburger*, 284 U.S. at 304).

he is not precluded from conviction and punishment for more than one offense.[4] If both offenses, as pleaded, have different elements under the *Blockburger* test, a judicial presumption arises that the offenses are different for double jeopardy purposes, and the defendant may be convicted and punished separately for each offense.[5] That presumption, however, can be rebutted if it can be shown that the Legislature clearly intended only one punishment for both offenses.[6]

In Texas, the *Blockburger* "same-elements" test is informed only by the pleadings, and a reviewing "court may not consider the evidence presented at trial" to make the determination.[7] Moreover, we have held that even where there is a substantial overlap in the proof required for each offense, the offenses are not the "same offense" for double jeopardy purposes if each offense, as pleaded, requires at least one element not required by the other offense.[8] Once a presumption is raised that count one and count two are different offenses under the *Blockburger* "same-elements" test, we consider a non-exclusive set of factors we listed in *Ex parte Ervin* to determine whether the Legislature clearly intended only one punishment for these separate offenses:

> whether the offenses provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are named similarly, whether the offenses have common punishment ranges, whether the offenses have a common focus (i.e. whether the "gravamen" of the offense is the same) and whether that common focus tends to indicate a single instance of conduct, whether the elements that differ between the offenses can be considered the "same"

---

[4] *United States v. Dixon*, 509 U.S. 688, 704 (1993) (rejecting "same conduct" test of *Grady v. Corbin*, 495 U.S. 508 (1990)).

[5] *Bien*, 550 S.W.3d at 184–85.

[6] *Id.* at 185; *Ex parte Benson*, 459 S.W.3d 67, 72 (Tex. Crim. App. 2015).

[7] *Benson*, 459 S.W.3d at 73; *Bien*, 550 S.W.3d at 184.

[8] *Ex parte McWilliams*, 634 S.W.2d 815, 824 (Tex. Crim. App. 1982).

under an imputed theory of liability which would result in the offenses being considered the same under *Blockburger* (i.e. a liberalized *Blockburger* standard utilizing imputed elements), and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes.[9]

If, as pleaded, the offenses each have at least one element the other does not, and if, according to the relevant statutory provisions, it is not clear that the Legislature intended both offenses to be punished as one, then separate convictions and punishments for each offense does not violate one's right against double jeopardy.

## II(B) — Analysis

In this case, the indictment for aggravated assault with a deadly weapon (count one) required proof that Appellant:

(1) intentionally or knowingly,
(2) threatened imminent bodily injury to Evonne White, and
(3) used or exhibited a deadly weapon, namely, a knife, or a metal bar, or a bag, or a metal object.

The indictment for family-violence assault (count two) required proof that appellant:

(1) intentionally, knowingly, or recklessly,
(2) caused bodily injury to Evonne White,
(3) by impeding the normal breathing or circulation of the blood of Evonne White by applying pressure to her throat with his hand or arm, and
(4) Evonne White was a member of appellant's family or household or a person with whom he had a dating relationship.

The court of appeals, in examining both of these charged offenses, determined that they differed on three bases.[10] First, the court of appeals found that the aggravated assault with a deadly weapon count

---

[9] *Ex parte Ervin*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999).

[10] *Philmon v. State*, 580 S.W.3d 377, 381–82 (Tex. App.—Houston [1st Dist.] 2019).

required proof of a threat, whereas the family-violence assault count did not.[11] Second, the court of appeals also found that the aggravated assault with a deadly weapon count required proof of a deadly weapon, whereas the family-violence assault count did not.[12] Third, the court of appeals noted that the family-violence assault count required proof of a dating relationship, whereas the aggravated assault with a deadly weapon count did not.[13] Appellant, in both his petition for discretionary review and brief on the merits, argues that the court of appeals erred on the issue of whether both counts required proof of a deadly weapon.[14] The State in its brief argues that the court of appeals correctly found a difference between the two counts in the threat element.[15] We address both parties' arguments in turn.[16]

Appellant argues that the facts needed to prove that he impeded White's breathing or circulation necessarily constitute proof of assault with a deadly weapon. First, as we stated in *Ex parte McWilliams*, simply because there is a substantial overlap in proof required for both offenses does not mean the offenses are the same for double jeopardy purposes.[17] Second, even though in some cases the facts proving that one impeded another's breathing or circulation may also prove the use or exhibition of a deadly weapon, that does not mean that impeding one's breathing or

---

[11]  *Id.* at 381.

[12]  *Id.* at 382.

[13]  *Id.*

[14]  Appellant's Pet. for Discretionary Review at 11–12; Appellant's Br. at 11–12.

[15]  State's Br. at 11–12.

[16]  Neither party makes an argument related to the element of a dating relationship.

[17]  *McWilliams*, 634 S.W.2d at 824.

circulation necessarily constitutes proof of using or exhibiting a deadly weapon.

We have interpreted "impeding" under Texas Penal Code § 22.01(b)(2)(B) to include any degree of impediment to one's normal breathing or circulation of blood flow. Because the statute does not define "impeding," in *Marshall*, we relied on the ordinary understanding of the word which is "[a] hindrance or obstruction."[18] In *Marshall*, the complainant was still able to breathe, just not deeply.[19] Nevertheless, because "the plain meaning of the statutory language indicates that any impediment to normal breathing" is sufficient, we held that the evidence of the complainant simply being unable to take deep breaths supported the defendant's conviction under § 22.01(b)(2)(B).[20] The *Marshall* holding implies that any hindrance, obstruction, or impediment for any amount of time to one's breathing or blood flow is *per se* a bodily injury and therefore sufficient to satisfy family-violence assault. This is an exceptionally low bar. It takes very little effort or force to slightly hinder another's breathing or circulation, and there is notably no injury or threat of injury requirement aside from the impediment, however minimal.

That being said, *any* hindrance, obstruction, or impediment for any amount of time to one's breathing or blood flow does not *necessarily* support a deadly weapon finding. Under Texas Penal Code § 1.07(a)(17)(B), a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."[21] We have further clarified that the statutory language "does not require that the actor actually intend death or serious bodily injury; an object is

---

[18]  *Marshall v. State*, 479 S.W.3d 840, 844 (Tex. Crim. App. 2016).

[19]  *Id.* at 842.

[20]  *Id.* at 844, 845 (emphasis added).

[21]  TEX. PENAL CODE Ann. § 1.07(a)(17)(B).

a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury."[22]

The Thirteenth Court of Appeals emphasized the capability requirement in *Davis*. The court held that delivering a few punches to complainant's face and upper body was insufficient to support a deadly weapon finding because, although punches could hypothetically cause serious bodily injury or even death if repeatedly delivered in the right place, that is not what the defendant was actually using his hands to do.[23] However, in a different case, when the defendant knocked the complainant unconscious with a single blow and then sat on top of him and pounded his face and head with both fists, causing a subarachnoid hemorrhage and a traumatic contusion to the brain, the Sixth Court of Appeals found that the evidence was sufficient to establish that his hands were deadly weapons under the statute.[24]

Whether an object was used as a deadly weapon under § 1.07 turns on whether an object was actually capable of causing death or serious bodily injury in the way the object was actually used or intended to be used. One can certainly cause death or serious bodily injury by impeding another's breathing, but the simple act of obstructing someone's airflow albeit ever so slightly, can be done without the possibility of causing serious bodily injury or death. As discussed, under Texas law, the threshold for satisfying "impeding" is incredibly low. One could lightly press on another's throat or hold a hand over another's mouth and nose for a very short amount of time in such a way as to

---

[22] *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

[23] *Davis*, 533 S.W.3d at 509 ("We conclude that [complainant]'s injuries do not demonstrate that appellant used his hands in a manner that was capable of causing death or serious bodily injury.").

[24] *Brooks v. State*, 900 S.W.2d 468, 472–73 (Tex. App.—Texarkana 1995, no pet.).

slightly impede normal breathing. The use of one's hands in that manner might not be capable of causing serious bodily injury or death. Under that scenario, the perpetrator would have to tighten their grip or hold it for longer before the use of their hands would actually be capable of causing serious bodily injury or death. If a perpetrator would have to change or alter their conduct or use of an object in order to be capable of causing serious bodily injury, that is not an actual capability based on the individual's use or intended use. Instead, that is a hypothetical capability which is not part of the consideration for § 1.07. In sum, impeding a person's breathing or circulation by applying pressure to the person's throat or neck is not an act *necessarily* capable of causing serious bodily injury or death. Accordingly, an allegation that the defendant impeded the breathing or circulation of another is not necessarily an allegation that the defendant used or exhibited a deadly weapon.

Thus, we return to the Appellant's argument before the Court: whether the deadly weapon offense and the impeding offense in Appellant's case are the same for double jeopardy purposes. Though the evidence in this case needed to prove that Appellant impeded White's breathing or circulation might have also been sufficient to prove he used a deadly weapon, we are only to consider the pleadings.[25] Because the current interpretation of "impeding" under the family-violence assault statute is such a low bar, we cannot agree with Appellant that any time one has used their hands or some object to impede another's breathing or blood circulation they have necessarily used their hands or that object in a manner sufficient to support a deadly weapon finding.

We now turn to the State's argument, relating to the court of appeals's determination that the aggravated assault with a deadly weapon count differed from the family-violence assault count because one offense requires proof of a threat of imminent bodily injury while the other offense

---

[25] *Bien*, 550 S.W.3d at 184.

requires actual bodily injury. We agree with the court of appeals's decision on this element. Thus, this constitutes another basis for finding that the family-violence assault count in this case is not the same offense as the aggravated assault with a deadly weapon count.

Accordingly, we agree with the court of appeals that, based on the *Blockburger* "same elements" test, these offenses, as pleaded, each require proof of at least one element that the other does not. Specifically, count one required proof of a threat and the use or exhibition of a deadly weapon while count two did not, and count two required proof of a bodily injury and that the complainant was in a dating or familial relationship with Appellant while count one did not. A presumption is therefore raised that count one and count two are different offenses. To rebut this presumption, it must be shown that the Legislature clearly intended only one punishment for these separate offenses.[26]

To show that the Legislature clearly intended only one punishment for the two separate offenses, we use the non-exclusive set of factors listed in *Ex parte Ervin*.[27] We are not persuaded that one punishment for both aggravated assault with a deadly weapon and family-violence assault was clearly intended by the Legislature.

The first factor, whether the provisions are in the same statutory section, is the only factor that could potentially suggest that the Legislature intended one punishment as both offenses are found in Chapter 22 of the Penal Code.

The second factor asks whether the two offenses are phrased in the alternative. They are not. There is no way to construe § 22.02(a)(2) and § 22.01(b)(2)(B) to suggest that the intent was for the

---

[26] *Id.* at 184-85; *Benson*, 459 S.W.3d at 72.

[27] *Ervin*, 991 S.W.2d at 814.

two statutory provisions to pose alternative ways of committing one single offense.

The third factor considers whether both offenses are named similarly. While both offenses have the word "assault" in the title, the remaining language in both titles is dissimilar and specifies that the focus is not merely regarding a simple assault. Count one includes "aggravated" and "with a deadly weapon" in the title, and the title of count two specifies that the offense was committed against an individual with whom Appellant had a dating or family relationship.

The fourth factor looks at whether the two offenses have similar punishment ranges. They do not. Aggravated assault with a deadly weapon is a second degree felony and has a range of between two and twenty years,[28] and family-violence assault by impeding breathing or circulation is a third degree felony and has a range of between two and ten years.[29]

The fifth factor asks whether the two offenses have a common focus, and if yes, whether that common focus tends to indicate a single instance of conduct. While the two offenses are both, on the surface, regarding assaultive conduct, they do not share a common focus. Aggravated assault with a deadly weapon focuses on threatening someone with imminent bodily injury and the use of a deadly weapon that is capable of causing death or serious bodily injury, while family-violence assault by impeding breathing or circulation focuses on impeding the breathing or circulation of someone with whom the perpetrator is in a dating relationship.

The sixth factor considers whether the elements that do differ between the two offenses could be the same under an imputed theory of liability. Even under an imputed theory of liability the differing elements, as charged, cannot be considered the same because the requirement of proof of

---

[28] TEX. PENAL CODE Ann. §§ 22.02(b), 12.33(a).

[29] *Id.* §§ 22.01(b), 12.34(a).

a dating relationship and impeding breathing or circulation, even under a liberalized *Blockburger* standard, should be viewed as also requiring the use of a deadly weapon. The different elements are not at all related.

The last factor looks at whether there is legislative history articulating an intent to treat the offenses the same or different. There is no legislative history explicitly suggesting either way. The only factor that truly weighs in favor of the legislature intending the two offenses to be punished as one is the fact that both offenses are found in the same chapter of the penal code, but even that holds little weight. Consequently, it is not apparent to us that the Legislature clearly intended only one punishment for these two offenses. As such, the presumption is not rebutted, and the two offenses are separate for double jeopardy purposes.

### III — Conclusion

Based on the aforementioned reasons, we disagree with Appellant that his separate convictions and punishments violated his right against double jeopardy. Accordingly, we affirm the judgment of the court of appeals.

DELIVERED: October 21, 2020
PUBLISH