

## NUMBER 13-18-00124-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**RAUL SILVA RODRIGUEZ,**                                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

### On appeal from the 398th District Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION
**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Benavides**

By two issues, appellant Raul Silva Rodriguez appeals his conviction for continuous sexual abuse of a child, a first-degree felony; aggravated sexual assault of a child, a first-degree felony enhanced by two prior felony convictions; and two counts of indecency with a child by contact, a second-degree felony enhanced by two prior felony convictions. *See* TEX. PENAL CODE ANN. §§ 12.42, 21.02, 21.11, 22.021. Rodriguez

alleges: (1) the trial court violated his right against double jeopardy; and (2) the evidence was insufficient to support his conviction for the continuous sexual abuse of a child. We affirm.

## I.  BACKGROUND

Rodriguez was initially charged with five counts: (1) continuous sexual abuse of Michael[1]; (2) two counts of aggravated sexual assault of Michael; and (3) two counts of indecency with Michael by contact. *See id.* Prior to trial, the State dismissed count two related to one of the aggravated sexual assault charges. *See id.* § 22.021.

At trial, Michael's stepmother, M.C., testified that Michael[2] lived with her and his father, J.C., in Albuquerque, New Mexico. M.C. explained that Michael had come to live with them when he was around eight years old, but had previously lived in McAllen, Texas with his biological mother, J.T. In 2010, J.T. had contacted J.C. and asked to have Michael come live in New Mexico due to some personal issues J.T. was experiencing. M.C. said they were happy to have Michael come and live with them. She said he was a good child that would go from very talkative to quiet. M.C. described an event in 2015 where they found inappropriate photos on Michael's cell phone, grounded him, and took his phone away from him. Two months later, M.C. arrived home early and could not find Michael's phone. When Michael arrived home from school, M.C. confronted him and he admitted he had taken the phone to school. That evening, M.C. and Michael ran an

---

[1]  In order to protect the complainant's identity, we will use the alias assigned by law enforcement and the initials of his family members throughout this memorandum opinion. *See generally* TEX. R. APP. P. 9.8.

[2]  At the time of his outcry, Michael was fifteen years old. The incidents in question occurred when Michael was around eight years old.

errand, and while in the car, she asked him about his behavior. Michael said to her that Rodriguez touched him "in a bad way" when he was younger. M.C. explained that she immediately had Michael call J.C. and tell him, and then later, the family called J.T. and had Michael tell her what he had told M.C. Michael completed a sexual assault exam and forensic interview in New Mexico following his outcry. M.C. stated that Michael now is more open with them and more focused on his schoolwork. She did agree on cross-examination that, even though Michael continued to visit J.T. and his family in Texas during the summer, she had not seen a behavior change in him when he returned.

J.T. testified next and explained that Rodriguez was the boyfriend of her mother, S.J.E. S.J.E. shared an apartment with Rodriguez and N.A., J.T.'s sister. J.T. lived next door to them for a time with Michael. J.T. stated that she used to work as an exotic dancer and Michael stayed with S.J.E. when she had to work late hours, as well as after school. J.T. also explained that she had substance abuse issues and paid her mother to watch Michael. J.T. recalled times when Michael would be alone with Rodriguez. She specifically recalled a time when she and S.J.E. had gone to the grocery store, leaving Michael with Rodriguez, and upon returning, the front door of the apartment had the deadbolt locked. J.T. found that unusual because Rodriguez knew they had just left to run an errand and would be back soon. J.T. questioned Rodriguez when he finally answered the door and he told her he had been in the bathroom. She stated that Rodriguez was just wearing cotton shorts when he opened the door. J.T. relayed the circumstances when she found out about Michael's outcry. She stated J.C. had called her and Michael was sobbing on the phone when he told her that Rodriguez had touched

3

him inappropriately. J.T. broke down crying and went to the local police department to report what Michael had disclosed to her. She told the jury that she had not communicated with S.J.E. since she made the report. On cross-examination, J.T. admitted that she bounced around between homes at times when Michael lived with her.

J.C. testified that he had not been the most reliable parent when Michael was younger. He said that sometime between 2008 and 2009, J.T. had called him and said she was having some issues with Child Protective Services. J.T. asked J.C. to take Michael and let him live with them. He agreed that there was an incident in August 2015 when he and M.C. took Michael's phone away from him. In October 2015, Michael made an outcry to M.C. in their car, and then to J.C. when he arrived home. J.C. said Michael had his head down, was crying, and very distraught when telling them what Rodriguez had done. J.C. stated he was mad and that J.T. was upset when Michael called her. They agreed that J.T. would report the incidents to the McAllen Police Department, and J.C. accompanied Michael to his forensic interview and sexual assault examination in New Mexico. J.C. said that Michael is more open with him now and they have a much closer relationship.

S.J.E. testified that she was dating Rodriguez and was also paid to be his provider. She said Michael spent a lot of time with them and that either she, N.A., or Rodriguez would watch Michael. S.J.E. stated that J.T. had a lot of "issues" and that was part of the reason they watched Michael. S.J.E. testified that the last time Michael was in McAllen, he had called her telling her he had wanted to see her, and the family got together for a barbecue. S.J.E. believed Michael looked happy in photographs taken

4

that day. She explained that since Rodriguez's arrest for the offenses, she had to move out of the apartment they shared because she was not earning money as his provider any longer and had not spoken to Michael. S.J.E. said Michael had called her once since his outcry, but when she realized it was him, she hung up on him. S.J.E. did recall one instance where she was leaving Michael with Rodriguez so she could go donate plasma, where Michael begged her not to leave or to allow him to go with her. She stated that she said no and left Michael with Rodriguez.

N.A. testified that she has a good relationship with Rodriguez, but she did not like him initially because her father had left due to S.J.E. and Rodriguez's relationship. N.A. agreed that Michael would be at their apartment with Rodriguez and N.A. had also allowed Rodriguez to care for her son.

Detective Nancy Pena with the McAllen Police Department met with J.T. and said she was crying when they first discussed this case. Detective Pena asked local police in New Mexico to assist and coordinate with J.C. and Michael. Detective Pena went to Rodriguez's apartment and asked Rodriguez and S.J.E. to come to the police station to give a statement. Both agreed. Detective Pena said S.J.E. was defensive, but changed her demeanor when she heard the allegations Michael was making. During Rodriguez's recorded statement, Detective Pena explained that Rodriguez was given his *Miranda* warnings even though he was not under arrest. Rodriguez denied ever being alone with Michael and stated he did not wear underwear.

Michael was the final witness to testify. He agreed that J.C. and M.C. had taken his phone away due to inappropriate photos. He told the jury that he told M.C. about the

5

abuse in order to "face his demons" and that he felt that "holding in" what had happened with Rodriguez was the reason he was getting in trouble. Michael explained that he told the forensic interviewer more details than he told his parents because he would never see the interviewer again and did not want his parents to "look at him differently." Michael said there were times when he was younger that he would be left alone with Rodriguez. Once, Michael testified that he had gone to lay down and felt Rodriguez "rub up" against his butt from behind, he felt "pressure," and Rodriguez was making "moaning or groaning" sounds. According to Michael, Rodriguez also touched Michael's penis and "played" with his testicles. Michael stated that type of touching happened more than once when he was around eight years old. Michael also explained that Rodriguez would put his mouth on Michael's penis and make Michael touch and put his mouth on Rodriguez's penis. He also said that Rodriguez wore boxer short underwear when these events would occur. Michael testified that he did not understand the physical changes that occurred to him during those encounters at that time, but felt embarrassed and disgusted by what happened. He also explained that Rodriguez would give him candy or money afterwards. Michael never told S.J.E. because she loved Rodriguez and he was afraid of how she would react. He stated that he felt "unloved" when S.J.E. hung up on him.

The jury found Rodriguez guilty of the four counts and the trial court sentenced him to thirty-five years' imprisonment in the Texas Department of Criminal Justice–Institutional Division for the continuous sexual abuse, thirty years' imprisonment for the aggravated sexual assault, and twenty-five years' imprisonment on each of the two counts of

indecency with a child by contact with the sentences to run concurrently. This appeal followed.

## II. EVIDENCE WAS SUFFICIENT

By Rodriguez's second issue, which we address first, he argues that the evidence was insufficient to support his conviction for count one, continuous sexual abuse of a child. *See id.* § 21.02. Additionally, Rodriguez also argues that the evidence presented was insufficient to prove the indictment's enhancement paragraphs.

### A. Standard of Review

When evaluating a sufficiency challenge, the reviewing court views the evidence in the light most favorable to the verdict to determine whether a rational jury could find all of the elements of the offense and the defendant guilty beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality opinion); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and a reviewing court is not to substitute its judgment as to facts for that of the jury as shown through its verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). When the reviewing court is faced with a record supporting contradicting inferences, the court must presume that the jury resolved any such conflict in favor of the verdict, even if it is not explicitly stated in the record. *Id.*

A reviewing court must measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex.

7

Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

**B.    Elements of the Offense**

A hypothetically correct jury charge for count one, continuous sexual abuse of a child, would instruct the jury that Rodriguez is guilty if:   (1) during a period of thirty days or more in duration; (2) he committed two or more acts of sexual abuse against Michael; and (3) at the time of the commission of the offense, he was seventeen years of age or older and Michael was a child younger than fourteen years of age. TEX. PENAL CODE ANN. § 21.02.

The State does not need to prove the exact dates of the abuse, only that "there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Buxton v. State*, 526 S.W.3d 666, 676 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (quoting *Brown v. State*, 381 S.W.3d 565, 574 (Tex. App.—Eastland 2012, no pet.)); *see Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.); *see also* TEX. PENAL CODE ANN. § 21.02(d) (jury not required to unanimously agree on which specific acts of sexual abuse were committed by defendant or exact dates when those acts occurred, but jury must unanimously agree that defendant, during a period of thirty days or more, committed two or more acts of sexual abuse).

The "testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child." *Garner*, 523 S.W.3d at 271; *see* TEX. CODE CRIM. PROC. ANN. art. 38.07. In cases where young children are involved, the court of criminal appeals has "cautioned that courts cannot impose unrealistic expectations regarding proof of when an offense actually occurred: '[I]t is not often that a child knows, even within a few days, the date that [he] was sexually assaulted. And, the younger the child, the greater the possibility' that [he] will be uncertain about the timing of the offense." *Dixon v. State*, 201 S.W.3d 731, 736 (Tex. Crim. App. 2006) (quoting *Sledge v. State*, 953 S.W.2d 253, 256 n.8 (Tex. Crim. App. 1997)).

Rodriguez argues that Michael "specifically testified he was molested only on three occasions" and could not recall specific dates; therefore, the State failed to prove the offenses were committed during a period of more than thirty days. He states that because the jury sent out a note requesting Michael's testimony regarding the length of time the abuse continued, it highlighted the fact that the evidence was insufficient. During its deliberation, the jury sent out a note that stated "testimony/transcript regarding length of time abuse occurred, months?" The trial court had Michael's testimony read to them. Michael initially testified about three specific instances of sexual abuse he could recall. He stated it happened "like more than, like, three times," but was unsure of the time period. However, later in his testimony, Michael stated that he would go visit S.J.E. and Rodriguez nearly every weekend for "months." The State asked, "were these things happening over that time period," referring to the instances of abuse, to which Michael responded, "Yeah." Multiple witnesses stated that Michael stayed with S.J.E. and

9

Rodriguez after school while he attended Crockett Elementary School, as well as on weekends, or as needed by his mother. M.C. and J.C. both stated that Michael came to live with them in 2010, when he was nine years old. J.T. testified that she moved back to McAllen with Michael when he was around six or seven years old.

The jury could reasonably infer, based on the testimony as a whole, that the instances of abuse described by Michael occurred during a period of thirty days or more. *See Montgomery*, 369 S.W.3d at 192. We hold that a rational jury could have found all the elements of the offense beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 902.

### C.    Enhancement Paragraphs

In order to establish, for punishment enhancement purposes, that Rodriguez had been convicted of a prior offense, "the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Henry v. State*, 509 S.W.3d 915, 918 (Tex. Crim. App. 2016) (quoting *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007)). "[N]o specific document or mode of proof is required to prove these two elements." *Id.* (quoting *Flowers*, 220 S.W.3d at 921). While "evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means," the State may use other types of evidence to prove an enhancement. *Id.* (quoting *Flowers*, 220 S.W.3d at 921). A prior conviction may be proved by "certified copies of the judgment and sentence and authenticated copies of records from the Texas Department of Corrections or other correctional institutes, including fingerprints supported by expert testimony matching them to the defendant." *Flowers*, 220 S.W.3d at 924

(quoting *Blank v. State*, 172 S.W.3d 673, 675 (Tex. App.—San Antonio 2005, no pet.)).

Whether the State met its burden of linking the conviction to the defendant is a matter of conditional relevancy. *Davis v. State*, 268 S.W.3d 683, 715 (Tex. App.—Fort Worth 2008, pet. ref'd). The relevance of a prior conviction is conditioned upon the production of evidence sufficient to show that the defendants are one and the same. *Id*. However, such linking evidence does not need to be provided before a trial court can properly admit the "penitentiary packet"[3] (pen packet); evidence should not be excluded merely because its relevance may depend upon the production of additional evidence at a later point in trial. *Id*; *see Fuller v. State*, 829 S.W.2d 191, 197 (Tex. Crim. App. 1992), *overruled on other grounds by Castillo v. State*, 913 S.W.2d 529, 537 (Tex. Crim. App. 1995). Therefore, when authenticated copies of conviction records are offered into evidence to prove that a prior conviction is part of a defendant's prior criminal record, it is not essential that supporting identification evidence precede the admission of the conviction evidence. *Davis*, 268 S.W.2d at 716.

Here, the State offered testimony from McAllen Police Department fingerprint examiner Joel Morales. Morales explained that he had taken fingerprints from Rodriguez earlier that day and he compared them with fingerprints from the pen packets subpoenaed from the Texas Department of Criminal Justice, and found that the right thumbprint and right middle finger matched. The State offered into evidence the pen packets which showed that Rodriguez had been sentenced to terms of imprisonment for two prior felony

---

[3] A penitentiary packet or "pen packet" is the certified documents from the Texas Department of Criminal Justice that contain a defendant's photograph, fingerprints, and judgment, sentencing him to confinement in a prison facility. *See* TEX. PENAL CODE ANN. § 12.42; *Martin v. State*, 227 S.W.3d 335, 337 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

offenses, and the fingerprint card Morales had taken from Rodriguez earlier that morning. Rodriguez did not object to the introduction of either piece of evidence. Therefore, we hold that Rodriguez waived any objection to the evidence. *See* TEX. R. APP. P. 33.1. However, even if Rodriguez had properly objected to the evidence, the State provided two pieces of evidence affirmatively linking the prior convictions to Rodriguez, and the trial court found that they did. We find there was sufficient evidence to support the finding of true on the enhancement paragraphs. *See Henry*, 509 S.W.3d at 918.

We overrule Rodriguez's second issue.

### III.　NO DOUBLE JEOPARDY VIOLATION

By his first issue, Rodriguez asserts that his protection against double jeopardy was violated when he was charged with continuous sexual abuse of a child, aggravated sexual assault of a child, and indecency with a child.

### A.　Standard of Review

The Fifth Amendment guarantee against double jeopardy protects "against multiple punishments for the same offense." *Price v. State*, 434 S.W.3d 601, 609 (Tex. Crim. App. 2014) (quoting *Whalen v. United States*, 445 U.S. 684, 688 (1980)); *see* U.S. CONST. amends V, XIV. The question of whether an individual may be punished for the same criminal act under two distinct statutes is a matter of legislative intent. *Price*, 434 S.W.3d at 609.

To determine whether there have been multiple punishments for the same offense, we begin by applying the "same elements" test set forth in *Blockburger v. United States*. *Bien v. State*, 550 S.W.3d 180, 184 (Tex. Crim. App. 2018) (citing *Blockburger v. United*

12

*States*, 284 U.S. 299, 304 (1932)). Under that test, two offenses are not the same if "each provision requires proof of a fact which the other does not." *Id.* (quoting *Blockburger*, 284 U.S. at 304). In Texas, we look to the pleadings to inform the *Blockburger* test. *Id.* If the two offenses have the same elements under the cognate-pleadings approach, then a judicial presumption arises that the offenses are the same for purposes of double jeopardy and defendant may not be convicted of both offenses. *Id.* Conversely, if the two offenses, as pleaded, have different elements under the *Blockburger* test, the judicial presumption is that the offenses are different for double jeopardy purposes and multiple punishments may be imposed. *Id.* at 184–85.

**B.    Applicable Law and Discussion**

Texas Penal Code § 21.02(b) sets out the offense of continuous sexual abuse of a child. *See* TEX. PENAL CODE ANN. § 21.02(b). The "act of sexual abuse" that constitutes a violation of § 21.02 may include both aggravated sexual assault of a child and indecency with a child. *See id.* § 21.02(c). Subsection (e) provides:

> A defendant may not be convicted in the same criminal action of an offense listed under Subsection (c) . . . unless the offense listed in Subsection (c):
>
> (1)    is charged in the alternative;
>
> (2)    occurred outside the period in which the offense alleged under Subsection (b) was committed; or
>
> (3)    is considered by the trier of fact to be a lesser included offense of the offense alleged under Subsection (b).

*Id.* § 21.02(e); *see Soliz v. State*, 353 S.W.3d 850, 852 (Tex. Crim. App. 2011).

Although Rodriguez alleges it was a double jeopardy violation for him to be convicted of all four offenses because the offenses occurred within the same time period,

13

he is mistaken. Count one, the continuous sexual abuse of a child, alleged a time period of "on or about the 1st day of September, 2007, through on or about 1st day of August, 2010;" count three, the aggravated sexual assault of a child, alleged a date of "on or about the 1st day of July, 2007;" count four, an indecency with a child charge, alleged a date of "on or about the 1st day of June, 2007;" and count five, the other indecency with a child charge, alleged a date of "on or about the 1st day of May, 2007." None of the time periods alleged in the indictment overlap each other.

We do not need to do analysis under the *Blockburger* test because there is no double jeopardy violation. *See Bien*, 550 S.W.3d at 184–85; *Price*, 424 S.W.3d at 609. Section 21.02 of the penal code states that continuous sexual abuse can include the elements of aggravated sexual assault or indecency with a child. *See* TEX. PENAL CODE. ANN. § 21.02(c). The important factor we must consider is how the indictment charges the offenses. *Bien*, 550 S.W.3d at 184 (quoting *Blockburger*, 284 U.S. at 304). Each count was separate; therefore, none were charged in the alternative. *See id.* § 21.02(e)(1). Counts three, four, and five were alleged to have occurred outside of the statutory period alleged in count one, the continuous sexual abuse charge. *See id.* § 21.02(e)(2). Therefore, because the offenses alleged in counts three, four, and five were outside the time period referenced in count one, there was no double jeopardy violation.[4] *See id.* We overrule Rodriguez's first issue.

---

[4] The testimony at trial stated that Michael was left in S.J.E.'s care throughout the school year and into the summer months. Therefore, a jury could have reasonably inferred that although Michael was not specific about the dates of the alleged abuse, the dates alleged in the indictments were sufficiently established. *See Montgomery*, 369 S.W.3d at 192

## IV. Conclusion

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
8th day of August, 2019.