

# NUMBER 13-18-00652-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

VICTOR CISNEROS,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

### On appeal from the 377th District Court
### of Victoria County, Texas.

# OPINION ON REMAND

**Before Chief Justice Contreras and Justices Benavides and Longoria
Opinion on Remand by Chief Justice Contreras**

We handed down our memorandum opinion and judgment in this cause on August 6, 2020. Appellant filed a motion for rehearing in which he requested, among other things, that we (1) change the notation in our memorandum opinion from "do not publish" to "publish" and (2) change the designation from a memorandum opinion to an opinion. *See*

TEX. R. APP. P. 47.2(a), (b). Pursuant to our request, the State filed a response stating in part that it does not object to the modified notation and designation. We denied the motion for rehearing but withdrew our earlier memorandum opinion and judgment and issued a substitute opinion and judgment on October 15, 2020.

On February 3, 2021, the Texas Court of Criminal Appeals vacated our judgment and remanded to us to clarify which convictions are to be vacated. *Cisneros v. State*, No. PD-1156-20, 2021 WL 359483, at *1 (Tex. Crim. App. Feb. 3, 2021) (per curiam) (noting that, though our opinion states that we would vacate the convictions for aggravated sexual assault of a child, the conclusion of our opinion purports to vacate the convictions in Counts 1, 14, and 24, and Count 1 is a conviction for continuous sexual abuse). Accordingly, we now withdraw our opinion of October 15, 2020, and substitute the following opinion along with an accompanying judgment.

A jury convicted appellant Victor Cisneros of eleven sex offenses: two counts of continuous sexual abuse of a young child or children, a first degree felony; three counts of aggravated sexual assault, a first degree felony; and six counts of indecency with a child, a second degree felony. *See* TEX. PENAL CODE ANN. §§ 21.02, 21.021, 21.11. The trial court set punishment at ninety-nine years' imprisonment for each of the five first degree felonies, and it ordered those sentences to run consecutively. For each of the indecency convictions, appellant was sentenced to concurrent terms of ten years' imprisonment. Appellant contends: (1) the three aggravated sexual assault convictions violated his right against double jeopardy; (2) the two continuous sexual abuse convictions violated his right against double jeopardy; (3) the sentences for the two continuous sexual abuse convictions were cruel and unusual; (4) the indictment did not give him sufficient notice of the offense dates; and (5) the jury charge contained error.

2

The State concedes appellant's first issue. We will reverse and render the three aggravated sexual assault convictions and affirm the remaining convictions.

## I. BACKGROUND

Appellant was charged by indictment with forty-three sex offenses, including continuous sexual abuse of a child (Counts 1 and 2), aggravated sexual assault of a child (Counts 3 through 26), indecency with a child by sexual contact (Counts 27, 28, and 29), and indecency with a child by exposure (Counts 30 through 43). The victims alleged in the indictment are appellant's former stepdaughters C.S. and M.S., who were ten and eleven years old, respectively, at the time of trial in August 2018.[1]

At trial, S.S.C. testified she is the mother of C.S. and M.S. and that she was once married to appellant. Appellant lived with the family in Victoria, first in a house on Wheeler Street and later in a house on Virginia Street. S.S.C. said there were many times when she went out for errands and appellant was alone with the children. S.S.C. stated that, on February 23, 2017, C.S. told her that appellant "put his thing on my thing" and he put "his middle on her middle." That evening, she confronted appellant, and according to S.S.C., appellant replied by saying "they hug me in that area," but S.S.C. told him that was not what she was referring to. At that point, appellant "stood there for maybe a couple of seconds, and he said, 'But what am I going to tell my mom? What am I going to tell my daughters?'" S.S.C. testified that appellant said: "'What if I go to prison?'" She said she told appellant to leave the apartment, and he left.

S.S.C. later made a report to Child Protective Services. C.S. was interviewed at the Children's Advocacy Center (CAC) the following day. About three days later, M.S. told

---

[1] We refer to the minor victims and their mother by initials to protect their identities.

S.S.C. that "he did to me what he did to [C.S.]" M.S. was then also interviewed at CAC, and both C.S. and M.S. submitted to sexual assault nurse examinations (SANE) on March 16, 2017.

S.S.C. stated she noticed a "drastic change" in the "attitude" of the girls when the family lived in the Wheeler Street house, and their "attitude and behavior" became worse as time progressed. She said M.S. had been admitted into a mental hospital four times in the three months preceding trial.

Detective Christina Tate of the Victoria Police Department testified that she met with S.S.C. and C.S. on February 28, 2017. She observed the CAC interviews. According to Tate, C.S. "appeared sad" and "scared" and "buried her head in the arm of the chair" during her interview; M.S. "appeared very—just sad, ashamed" and "covered her face a lot when talking."

Tate interviewed appellant on April 3, 2017. Appellant said that S.S.C. left the children with him on several occasions, even though he had asked her to take them with her. According to Tate, when appellant was asked for an explanation as to why his penis would have touched his stepdaughters, he said: "I don't know. They hug me every day. You know, I walk in my pajamas. I'm cooking. They're hugging me. I'm laying down. They're right beside me, seeing TV; or they're sitting on my lap." Tate said appellant was cooperative with law enforcement.

C.S. testified appellant "put his middle part to [her] middle part" while her mother was out shopping and her brothers were in another room playing video games. She said this happened "[m]ore than one time" and that it first happened during the daytime at the Wheeler Street house. C.S. said she was lying down and facing up on her mother's bed, while appellant was lying down "[o]n top of [her]" and facing down. She said appellant told

4

her to get on the bed, "pulled . . . down" her underwear, pulled up her dress, and took off his clothes. C.S. agreed with the prosecutor that "[s]kin to skin" contact was made, and that appellant also touched her "middle part" with his hand, but C.S. could not remember whether "his middle part went into [her] middle part." She said that, once in the Wheeler Street house, appellant "told [her] to put [her] mouth onto his middle part" and she did so. C.S. said this also happened in the Virginia Street house and that she told her mother about it "immediately" after the last time it happened. She denied that appellant told her not to tell anyone.

M.S. testified that, at Wheeler Street house, while her mother and brothers were out shopping, appellant asked her to come into her mother's bedroom, pulled down her pants and underwear, and "was going . . . up and down on top of me." M.S. said appellant's pants and underwear were "completely off." She testified that appellant put his finger in her "middle," that he "put his middle in [her] mouth," and that "his middle [went] inside [her] middle." She stated appellant told her not to tell or "[h]e would kill my family." Another time at the Virginia Street house, appellant told M.S. to go to her mother's room, took off her clothes, and was "[g]oing up and down" and put his "middle" inside her "middle," which hurt.

Appellant was convicted on Counts 1 and 2 (continuous sexual abuse of a young child); Counts 11, 14, and 24 (aggravated sexual assault); and Counts 30, 33, 34, 36, 37, and 43 (indecency with a child).[2] The trial court sentenced appellant as set forth above. Appellant filed a motion for new trial which was denied after a hearing, and this appeal followed.

---

[2] The remaining counts in the indictment were either abandoned by the State or vacated by the trial court and were not submitted to the jury.

## II. Discussion

The arguments appellant makes in his first three issues were raised in his motion for new trial. We review the trial court's denial of that motion for abuse of discretion, reversing only if no reasonable view of the record could support the ruling. *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). However, a trial court has no discretion in determining what the law is or applying the law to the facts. *State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004). Thus, a failure by a trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

### A. Double Jeopardy

#### 1. Aggravated Sexual Assault

By his first issue, appellant argues that the three aggravated sexual assault convictions should be vacated on double jeopardy grounds. The State agrees with appellant, as do we.

The Double Jeopardy Clause of the Fifth Amendment, which is applicable to the states through the Fourteenth Amendment, protects a person from multiple punishments for the same offense. U.S. CONST. amends. V, XIV; *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014). "In the multiple punishments context, two offenses may be the same if one offense stands in relation to the other as a lesser-included offense, or if the two offenses are defined under distinct statutory provisions but the Legislature has made it clear that only one punishment is intended." *Littrell v. State*, 271 S.W.3d 273, 275–76 (Tex. Crim. App. 2008); *Carmichael v. State*, 505 S.W.3d 95, 100 (Tex. App.—San Antonio 2016, pet. ref'd); *see Brown v. Ohio*, 432 U.S. 161, 168 (1977) ("The greater offense is . . . by definition the 'same' for purposes of double jeopardy as any lesser offense included in it."); *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006)

6

(noting that a multiple punishments claim can arise in "the lesser-included offense context, in which the same conduct is punished twice; once for the basic conduct, and a second time for that same conduct plus more (for example, attempted assault of Y and assault of Y; assault of X and aggravated assault of X)").

Whether offenses are the "same" for double jeopardy purposes is a matter of legislative intent. *Id.* at 276. Ordinarily, we ask "whether each provision requires proof of a fact which the other does not." *Id.* (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). In asking that question, the focus is on the elements alleged in the charging instrument, not on the offense as defined in the penal code. *Garfias*, 424 S.W.3d at 58; *Ex parte Denton*, 399 S.W.3d 540, 546 (Tex. Crim. App. 2013). Here, the continuous sexual abuse charges alleged only that appellant touched the children's genitals (i.e., indecency with a child by contact), whereas the aggravated sexual assault charges alleged appellant caused his sexual organ to penetrate their mouths.[3] The charges

---

[3] Aggravated sexual assault was set forth in Counts 11, 14, and 24 of the jury charge. Count 11 alleged that appellant, "on or about a day in 2014," intentionally or knowingly caused the penetration of C.S.'s mouth by his sexual organ; Count 14 alleged that appellant, "on or about a day in 2017," intentionally or knowingly caused the penetration of C.S.'s mouth by his sexual organ; and Count 24 alleged that appellant, "on or about a day in 2014," intentionally or knowingly caused the penetration of M.S.'s mouth by his sexual organ. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii) (providing that a person commits aggravated sexual assault if he intentionally or knowingly "causes the penetration of the mouth of a child [under seventeen years of age] by the sexual organ of the actor").

Continuous sexual abuse of a child was set forth in Counts 1 and 2 of the jury charge, with all of the predicate "acts of sexual abuse" being indecency with a child by contact. *See id.* § 21.02(b) (providing that a person commits continuous sexual abuse of a young child if, "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" against "a child younger than 14 years of age"). Count 1 alleged that appellant committed continuous sexual abuse of C.S. by touching her genitals on more than one occasion from "on or about a day in 2014 through on or about" February 26, 2017. *See id.* §§ 21.02(b), 21.02(c)(2) (defining "sexual abuse" in part as "indecency with a child under Section 21.11(a)(1), if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child"), 21.11(a)(1) (stating that a person commits indecency with a child if the person "engages in sexual contact with [a child under seventeen years of age] or causes the child to engage in sexual contact"), 21.11(c) (defining "sexual contact" in part as "any touching by a person" of "any part of the genitals of a child" with "the intent to arouse or gratify the sexual desire of any person"). Similarly, Count 2 of the jury charge alleged that appellant committed continuous sexual abuse of M.S. by touching her genitals on more than one occasion from "on or about a day in 2014 through on or about a day in 2017." *See id.* §§ 21.02(b), 21.02(c)(2), 21.11(a)(1), 21.11(c).

7

therefore each require proof of a fact which the other does not. *See Blockburger*, 284

U.S. at 304; *Littrell*, 271 S.W.3d at 276.

Nevertheless, as the State notes, penal code § 21.02(e) states:

A defendant may not be convicted in the same criminal action of an offense listed under Subsection (c) [enumerating various individual sex offenses, including aggravated sexual assault] the victim of which is the same victim as a victim of the offense alleged under Subsection (b) [continuous sexual abuse] unless the offense listed in Subsection (c):

(1)     is charged in the alternative;

(2)     occurred outside the period in which the offense alleged under Subsection (b) was committed; or

(3)     is considered by the trier of fact to be a lesser included offense of the offense alleged under Subsection (b).

TEX. PENAL CODE ANN. § 21.02(e). The Texas Court of Criminal Appeals has determined

that this provision evinces a clear legislative intent "to disallow dual convictions for the

offense of continuous sexual abuse and for offenses enumerated as 'acts of sexual

abuse' when based on conduct against the same child during the same period of time,"

regardless of whether the separately-charged individual acts of sexual abuse are also

alleged to be predicate offenses for continuous sexual abuse. *Price v. State*, 434 S.W.3d

601, 606 (Tex. Crim. App. 2014). Indeed, § 21.02(e) forbids dual convictions even when,

as here, the § 21.02 charge alleges specific conduct which is mutually exclusive from the

conduct alleged in the separate individual charges. *See Soliz v. State*, 353 S.W.3d 850,

852 (Tex. Crim. App. 2011) (noting that § 21.02(e) "prevents the State from mixing a

§ 21.02 count with a count for a discrete sexual offense that *could have* served as part of

the § 21.02 count" (emphasis added)).

Here, the victims of the aggravated sexual assault offenses were the same as the

victims of the continuous sexual abuse offenses; the aggravated sexual assault charges

were not presented as alternatives or as lesser-included offenses of continuous sexual abuse; and the aggravated sexual assault charges were based on conduct which occurred within the same time period alleged in the continuous sexual abuse charges. *See* TEX. PENAL CODE ANN. § 21.02(e). Therefore, the dual convictions in this case violated the statute and appellant's constitutional rights. *See id.*; *Price*, 434 S.W.3d at 606. The trial court abused its discretion by concluding otherwise. Appellant's first issue is sustained.

Generally, when a defendant is convicted in a single criminal trial of two offenses that are considered the same for double jeopardy purposes, the remedy is to retain the conviction for the "most serious offense" and vacate the other conviction. *Bien v. State*, 550 S.W.3d 180, 188 (Tex. Crim. App. 2018). The "most serious offense" is the one for which the "greatest sentence was assessed." *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006). The parties both assert that continuous sexual abuse is the "most serious offense" here because, not only is it a first degree felony like aggravated sexual assault, it also carries parole ineligibility as a penalty upon conviction. *See* TEX. GOV'T CODE ANN. § 508.145(a).[4] Appellant and the State both ask that the three aggravated sexual assault convictions be vacated. We will grant the requested relief.[5]

---

[4] In *Ex parte Cavazos*, the Texas Court of Criminal Appeals overruled prior case law to the extent it held that "the degree of the felony, range of punishment, and rules governing parole eligibility" "shall be used" in determining which offense is the "most serious." 203 S.W.3d 333, 338 (Tex. Crim. App. 2006). In *Bigon v. State*, the Court acknowledged that the degree of felony may be considered as a tiebreaker when the sentences imposed are identical. 252 S.W.3d 360, 373 (Tex. Crim. App. 2008). Implicit in *Bigon* is that parole eligibility may also be considered as a tiebreaker in such a situation. *See Villanueva v. State*, 227 S.W.3d 744, 749 (Tex. Crim. App. 2007) (retaining conviction for injury to a child by act, and vacating conviction for injury to a child by omission, because the former conviction was accompanied by an affirmative deadly weapon finding); *id.* at 753 n.1 (Keller, P.J., dissenting) (observing that the majority's conclusion is "contrary to the holding in [*Cavazos*] that parole eligibility may not be considered in making such decisions").

[5] In light of the concurrence between the parties on this issue, we do not express an opinion as to which is the most serious offense in this case. *See* TEX. R. APP. P. 47.1.

## 2. Continuous Sexual Abuse of a Child

Appellant argues by his second issue that the two convictions for continuous sexual assault of a child—one pertaining to C.S. and one to M.S.—also violate double jeopardy. He notes that the penal code defines the offense as the commission of two or more acts of sexual abuse during a period of thirty days or more "regardless of whether the acts of sexual abuse are committed against one or more victims." TEX. PENAL CODE ANN. § 21.02(b)(1). He contends that, because there were two victims in this case and "'[t]wo' is a subset" of . . . 'one or more,'" the State proved the same offense twice.

When a defendant alleges that multiple punishments have been assessed for the same offense under a single statute, "we must determine the allowable unit of prosecution for the statute that proscribes the offense." *Jones v. State*, 323 S.W.3d 885, 888 (Tex. Crim. App. 2010). If each alleged violation of the statute was for a separate "allowable unit of prosecution," there is no double jeopardy violation. *See Ex parte Hawkins*, 6 S.W.3d 554, 556 (Tex. Crim. App. 1999). Where a statute does not explicitly state the allowable unit of prosecution, we must construe the statute to identify the focus or "gravamen" of the offense. *Jones*, 323 S.W.3d at 888; *Gonzalez v. State*, 516 S.W.3d 18, 21 (Tex. App.—Corpus Christi–Edinburg 2016, pet. ref'd). "The gravamen of an offense can be (1) the result of the conduct, (2) the nature of the conduct, or (3) the circumstances surrounding the conduct." *Loving v. State*, 401 S.W.3d 642, 647 (Tex. Crim. App. 2013). One way to determine the gravamen of a statutory provision is to analyze the grammar and syntax of the statute. *Id.* (citing *Jones*, 323 S.W.3d at 888).

The parties cite no authority, and we find none, directly discussing the unit of prosecution for continuous sexual abuse under § 21.02, also known as Jessica's Law. *See Soliz*, 353 S.W.3d at 851. The State points to subsection (f) of the statute, which

states: "A defendant may not be charged with more than one count [of continuous sexual abuse] if all of the specific acts of sexual abuse that are alleged to have been committed are alleged to have been committed against a single victim." TEX. PENAL CODE ANN. § 21.02(f). The State argues that the corollary of subsection (f) is that a defendant *may* be charged with more than one count of continuous sexual abuse if multiple acts of sexual abuse are alleged to have been committed against each of multiple victims.

We agree. In *Price*, the court of criminal appeals held that the statutory language of § 21.02 "reflects that the Legislature intended to permit one conviction for continuous sexual abuse based on the repeated acts of sexual abuse that occur over an extended period of time against a *single* complainant." 434 S.W.3d at 605–06 (emphasis added). After reviewing the circumstances surrounding the statute's enactment, the *Price* Court again noted that the "statutory scheme [is] to permit only one conviction for continuous sexual abuse for acts committed against a *single* child during a specified period of time." *Id.* at 610 (emphasis added). Previously, the Court in *Soliz* observed that "[s]ubsections (e) and (f) [of § 21.02] appear to be designed to prevent problems that might arise from the legislature's relaxation of the unanimity requirement" in subsection (d). 353 S.W.3d at 851 (citing TEX. PENAL CODE ANN. § 21.02(d) (providing that the jury is "not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed")). Subsection (f) makes clear that only one § 21.02 charge may be brought when there is only one victim, but it says nothing of the situation when there are multiple victims. If the Legislature intended to prohibit multiple § 21.02 prosecutions in cases with multiple victims, or if it intended to prohibit multiple § 21.02 prosecutions relating to the same time period irrespective of the number of victims, it could have easily done so, but it did not.

11

We hold that the unit of prosecution for continuous sexual abuse is a series of acts of sexual abuse "that occur over an extended period of time against a single complainant." *Price*, 434 S.W.3d at 605–06. Thus, the trial court did not abuse its discretion by concluding the two convictions in this case did not violate appellant's rights. Appellant's second issue is overruled.

## B. Cruel and Unusual Punishment

Appellant argues by his third issue that his consecutive ninety-nine-year prison sentences for continuous sexual abuse are grossly disproportionate and constitute cruel and unusual punishment. Appellant emphasizes that, unlike a defendant convicted of murder, a defendant convicted of continuous sexual abuse is always ineligible for parole and must register as a sex offender. *See* TEX. CODE CRIM. PROC. ANN. art. 62.001(5); TEX. GOV'T CODE ANN. § 508.145(a), (d)(1)(a). He argues that the law treats sex offenders "as pariahs, lepers, and how Gypsies (Roma), communists, Jews, Negroes, and political enemies were treated in Nazi Germany." *See Furman v. Georgia*, 408 U.S. 238, 245 (1972) (Douglas, J., concurring) ("[I]t is 'cruel and unusual' to apply the death penalty— or any other penalty—selectively to minorities whose numbers are few, who are outcasts of society, and who are unpopular, but whom society is willing to see suffer though it would not countenance general application of the same penalty across the board.").

The Eighth Amendment, applicable to state courts through the Fourteenth Amendment, prohibits punishments that are "grossly disproportionate to the severity of the crime" and those that do not serve any "penological purpose." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1144 (2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 & n.7 (1976)); *see* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."); *id.* amend. XIV. "Outside the

context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Ewing v. California*, 538 U.S. 11, 21 (2003); *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). The United States Supreme Court has only twice held that a non-capital sentence imposed on an adult was constitutionally disproportionate. *See Solem v. Helm*, 463 U.S. 277, 303 (1983) (concluding that life imprisonment without parole was a grossly disproportionate sentence for the crime of "uttering a no-account check" for $100); *Weems v. United States*, 217 U.S. 349, 383 (1910) (concluding that punishment of fifteen years in a prison camp was grossly disproportionate to the crime of falsifying a public record). Generally, as long as a sentence is legal and assessed within the legislatively determined range, it will not be considered excessive, cruel, or unusual. *Simpson*, 488 S.W.3d at 323; *see Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) (orig. proceeding) (noting that "the sentencer's discretion to impose any punishment within the prescribed range is essentially unfettered").

The ninety-nine-year sentences were within the applicable statutory range for a first degree felony. *See* TEX. PENAL CODE ANN. § 12.32(a) (stating that a first degree felony is punishable by imprisonment "for life or for any term of not more than 99 years or less than 5 years"). And a trial court has "absolute discretion to cumulate sentences" where, as here, cumulation is authorized by law. *Byrd v. State*, 499 S.W.3d 443, 446 (Tex. Crim. App. 2016); *see* TEX. CODE CRIM PROC. ANN. art. 42.08 (authorizing cumulation of sentences generally); TEX. PENAL CODE ANN. § 3.03(b)(2) (providing that a court may order sentences for multiple counts of continuous sexual abuse of a child to run consecutively even if the offenses arise out of the same criminal episode).

A sentence that is within the applicable range of punishment may nevertheless be

cruel or unusual in the "exceedingly rare" or "extreme" case in which the sentence is grossly disproportionate to the offense. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)); *Solem*, 463 U.S. at 287. "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer*, 538 U.S. at 77. "To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Simpson*, 488 S.W.3d at 323 (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)). "In the rare case in which the threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* (citing *Graham*, 560 U.S. at 60). "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id.* (citing *Graham*, 560 U.S. at 60).

The State argues that appellant failed to preserve this issue because, though he raised it in his written motion for new trial and hearing on the motion, the record contains no evidence of any sentences received by other offenders in the same jurisdiction or for similar crimes. *See id.* In fact, at the new trial hearing, the State offered into evidence seventeen Victoria County judgments, dated from 2012 to 2018, showing that nine different defendants were sentenced to life or ninety-nine years' imprisonment after being convicted of aggravated sexual assault of a child. In one case, a defendant convicted of two counts of aggravated sexual assault was sentenced to ninety-nine years'

14

imprisonment for each count and the sentences were ordered to run consecutively.

Here, the challenged sentences were imposed for continuous sexual abuse of a child, not aggravated sexual assault. Still, the seventeen judgments offered as evidence by the State are probative as to whether appellant received a grossly disproportionate sentence for continuous sexual abuse—which, like aggravated sexual assault, is a first degree felony sex offense committed against a child. We conclude the trial court did not abuse its discretion in concluding that appellant's sentence was not grossly disproportionate to the offense so as to violate his constitutional rights. Appellant's third issue is overruled.

## C. Notice of Offense Date

In both the indictment and the jury charge, each offense was alleged to have occurred "on or about a day in [a year]" rather than on a specific date in a year.[6] Appellant argues by his fourth issue that his due process rights were violated because the indictment did not provide him with adequate notice of the alleged offense dates. *See Curry v. State*, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000) (noting that both the United States and Texas Constitutions "guarantee an accused the right to be informed of the nature and cause of the accusation against him").

As to the indictment, appellant failed to preserve any issue because he did not raise the issue prior to trial. *See* TEX. CODE CRIM PROC. ANN. art. 1.14(b) ("If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and

---

[6] Count 1 alleged that the predicate acts of sexual abuse against C.S. were committed during a period of thirty days or more "from on or about a day in 2014 through on or about [February 26, 2017]." Count 2 alleged that the predicate acts of sexual abuse against M.S. occurred during a period of thirty days or more "from on or about a day in 2014 through on or about a day in 2017."

15

forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding."). In any event, the court of criminal appeals has held that "[w]here an indictment alleges that some relevant event transpired 'on or about' a particular date, the accused is put on notice to prepare for proof that the event happened at any time within the statutory period of limitations." *Thomas v. State*, 753 S.W.2d 688, 693 (Tex. Crim. App. 1988) (en banc) (noting that "proof of a date within the limitations period but other than that alleged does not amount to a variance which will threaten the validity of any ensuing conviction").

Appellant contends by his fifth issue that the jury charge was defective for the same reason.[7] Because his trial counsel did not object to the jury charge on this basis, appellant must show that the jury charge contained error which caused him egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). Egregious harm will be found only if the error deprived the defendant of a fair and impartial trial. *Id.* The record must disclose actual rather than theoretical harm, and the error must have affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory. *Id.*

Appellant baldly alleges in his fifth issue that "[t]he error in the Court's charge . . . was egregious" and "profound" and that it "contributed to" his sentences. However, he does not substantiate this allegation with any reference to the record or the facts of the case. We find nothing in the record establishing that the use of years rather

---

[7] Appellant's fifth issue also argues that the jury charge was defective for the reasons set forth in his first three issues. We have already addressed those issues and need not do so again. *See* TEX. R. APP. P. 47.1.

than precise dates in the jury charge caused confusion or otherwise affected appellant's defense in any way. Therefore, assuming but not deciding that the charge was erroneous, appellant has not established the error would be reversible. *See id.*

Appellant's fourth and fifth issues are overruled.

### III. Conclusion

We reverse the judgments of conviction for aggravated sexual assault in Counts 11, 14, and 24, and we render judgment vacating those convictions. The remaining judgments of conviction are affirmed.

DORI CONTRERAS
Chief Justice

Publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
4th day of March, 2021.