**Opinion filed April 6, 2023**



# In The

# Eleventh Court of Appeals

_____

## No. 11-21-00155-CR

_____

## EDDIE BARNES, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-18-0905-CR**

### O P I N I O N

Eddie Barnes, Appellant, was indicted for three counts of murder: (1) capital murder, (2) felony murder, and (3) murder. *See* TEXAS PENAL CODE ANN. §§ 19.02, 19.03 (West 2019 & Supp. 2022). Finding Appellant not guilty of capital murder—but guilty of the lesser included offense of murder—and guilty of the offense of felony murder, the jury assessed punishment at confinement in the Correctional Institutions Division of the Texas Department of Criminal Justice for a term of

thirty-five years and a fine of $2,500 for each count. Appellant complains on appeal that the trial court erred in denying his motion to suppress an interview with police and that his convictions and punishments amount to double jeopardy. We affirm in part and vacate in part.

*Factual and Procedural History*

The specific details of the murder conflicted throughout the trial, but we are clear as to the following facts. The victim was stripped naked, bound, violently beaten, and tortured, with the cause of death determined to be homicidal violence—likely due to asphyxia. The body was bound tightly with rope, wire, different types of tape, as well as electrical and data cords, before being wrapped in several layers of bags and plastic. There was also a "wad" of tape inside the victim's mouth, which would have severely interfered with his ability to breathe. Further, testimony was presented that Appellant and others were present at the time the victim sustained the injuries and that immediately following the infliction of said injuries, Appellant said, "Now you know what I'm capable of," indicating Appellant's responsibility for the actions of those involved.

Appellant was first indicted for capital murder on April 25, 2018. The State reindicted Appellant on June 8, 2021, alleging three offenses: capital murder, felony murder, and murder.[1] The same victim was alleged for all three criminal homicide offenses. On June 18, 2021, Appellant filed a Motion to Suppress the statement that he made to police following his arrest for possession of methamphetamine. While Appellant was in custody for this offense, he spoke with Ector County Sheriff Investigator Ricardo Rodriguez and Sergeant Abel Sanchez. Investigator Rodriguez spoke with Appellant when he was initially arrested for the drug charge and again

---

[1]The reindictment amended the stated date of the alleged offense of capital murder. No other changes were made.

the next day after he was released on bond. Appellant was provided *Miranda*[2] warnings during the initial interview only. Both Investigator Rodriguez and Sergeant Sanchez testified at the motion to suppress hearing on June 21, 2021, as did Appellant. Appellant and Investigator Rodriguez both indicated that Appellant voluntarily returned for the second interview. During both interviews, the circumstances of the murder case were discussed.

The trial court denied Appellant's motion to suppress and entered findings of fact and conclusions of law on June 24, 2021. The trial court concluded that Appellant voluntarily presented himself and spoke with Investigator Rodriguez at the time of the second interview and that the second interview was not a custodial interrogation. The audio recording of the second interview between Appellant and Investigator Rodriguez was admitted as evidence at trial.[3]

Following the close of evidence at the guilt/innocence phase of trial—during which Appellant testified—the jury found Appellant guilty of (1) the lesser included offense of murder on Count No. One's charge of capital murder and (2) felony murder as charged in Count No. Two. Appellant moved for a mistrial on the grounds of double jeopardy, and the trial court overruled that motion following the presentation of evidence during the punishment phase. The jury assessed the same punishment for each conviction: confinement for a term of thirty-five years, accompanied by a $2,500 fine. Appellant filed this appeal challenging both the ruling on the motion to suppress and the violation of the Double Jeopardy Clause in his conviction and punishment.

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]Although not specified in the suppression hearing, we deduce—based on the evidence and reference at trial—that the second interview at issue in the hearing was later admitted at trial as State's Exhibit No. 95.

*Issue One: Motion to Suppress*

In Appellant's first issue, he argues that the trial court erred in denying his motion to suppress oral statements he made to officers during the second interview. Appellant asserts that the statements were obtained in violation of both *Miranda* and Article 38.22 of the Texas Code of Criminal Procedure. Appellant argues that the interview amounted to a custodial interrogation and that, without the warnings, his constitutional rights were violated. We disagree.

*Standard of Review*

A trial court's ruling on a motion to suppress evidence is reviewed for an abuse of discretion and should only be reversed if the outcome is outside the zone of reasonable disagreement. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021) (citing *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018); *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014)). When there is a mixed question of law and fact, we apply a bifurcated standard of review. *Id.* Total deference is given to the trial court's factual assessment of the circumstances surrounding the questioning. *Id.* If the trial court does not make explicit findings of fact, "we view the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id.* (citing *Herrera v. State*, 241 S.W.3d 520, 527 (Tex. Crim. App. 2007)). When, as here, the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* We will sustain the trial court's decision if it is correct on any theory of law

4

applicable to the case. *Arguellez v. State*, 409 S.W.3d 657, 662–63 (Tex. Crim. App. 2013); *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005).

*Miranda* and Article 38.22 of the Texas Code of Criminal Procedure deem statements produced by custodial interrogation to be inadmissible unless the accused is first warned that (1) he has the right to remain silent, (2) his statement may be used against him, (3) he has the right to have a lawyer present prior to and during any questioning, and (4) if he is unable to hire a lawyer, he has the right to have a lawyer appointed. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966); TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2018). In addition, Article 38.22 requires a warning that the accused has the right to terminate the interview at any time. *Herrera*, 241 S.W.3d at 526. The warnings are required only when there is a custodial interrogation. *Id.*

"Custody is a mixed question of law and fact that does not turn on credibility and demeanor unless the witness testimony, if believed, would always decide the custody question." *Wexler*, 625 S.W.3d at 167; *see State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013). The ultimate legal determination of whether the person was in custody under those circumstances is reviewed de novo. *See Kelly*, 204 S.W.3d at 818. If a suspect is in custody, any statements produced by custodial interrogation are inadmissible unless the accused is first provided warnings as required by *Miranda* and Article 38.22. *Wexler*, 625 S.W.3d at 167; *see also Miranda*, 384 U.S. at 479; CRIM. PROC. art. 38.22.

A custody determination requires two inquiries: an inquiry into the circumstances surrounding the interrogation and an inquiry into whether a reasonable person in those circumstances would have felt that he was not free to leave. *Wexler*, 625 S.W.3d at 167 (citing *Thompson v. Keohane*, 516 U.S. 99 (1995)). The Texas Court of Criminal Appeals outlined four general situations that may constitute custody:

(1) the suspect is physically deprived of [his] freedom of action in any significant way, (2) a law enforcement officer tells the suspect that [he] cannot leave, (3) law enforcement officers create a situation that would lead a reasonable person to believe [his] freedom of movement has been significantly restricted, or (4) there is probable cause to arrest, and law enforcement officers do not tell the suspect that [he] is free to leave.

*Wexler*, 625 S.W.3d at 167−68 (citing *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996)). In the first three situations, the restriction of movement must amount to the degree associated with an arrest, rather than an investigative detention. *Id.* at 168. The fourth situation requires that the officer's subjective intent be either "communicated or otherwise manifested to the suspect." *Id.*; *see Dowthitt*, 931 S.W.2d at 254; *see also Stansbury v. California*, 511 U.S. 318, 324−25 (1994) (An officer's subjective intent is irrelevant if it was never conveyed to the suspect.).

To evaluate whether a reasonable person in the suspect's situation would have felt that there was a restraint on his freedom to a degree associated with an arrest, the record must establish the circumstances manifested to and experienced by him. *State v. Ortiz*, 382 S.W.3d 367, 373 (Tex. Crim. App. 2012) ("[O]nly the objective circumstances known to the detainee should be considered in deciding what a reasonable person in his position would believe."); *see also Thompson*, 516 U.S. 99 at 113 ("[I]f encountered by a 'reasonable person,' would the identified circumstances add up to custody . . . ?"); *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) ("[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."). The defendant has the initial burden to establish that his statement was the product of a custodial interrogation. *Herrera*, 241 S.W.3d at 526; *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005).

*Analysis*

Appellant points out, and the State does not dispute, that he was not provided *Miranda* warnings prior to his second recorded interview with Investigator

6

Rodriguez on October 25, 2017. However, Appellant had to do more than alert the trial court to the lack of *Miranda* warnings during this second recorded interview. Appellant had the burden to prove that the statements made in that interview were the product of a custodial interrogation. *See Herrera*, 241 S.W.3d at 526. He failed to do so.[4]

Here, the trial court did make explicit findings of fact which were supported by the record:

(1) that after posting a bond and being discharged on a separate charge, Appellant knew and admitted that he was free to leave the premises, but he returned to speak with Investigator Rodriguez;

(2) that Appellant was not in custody at the time of the second interview;

(3) that during the second interview Appellant was able to leave the investigator's office, he did so, and he returned;

(4) that it was Appellant that decided and announced when he would go home; and

(5) that in the event that he needed additional information, Appellant invited Investigator Rodriguez to visit him at home anytime.

Further, the trial court concluded that not only was the second interview not custodial, but Appellant was voluntarily sharing information for his own benefit. In short, the trial court concluded that the second interview did not, in fact and circumstance, amount to a custodial interrogation. Our case law grants great discretion to the trial court as the finder of fact ruling on suppression motions. *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006) (citing *Swain*, 181 S.W.3d at 365). Appellant's motion to suppress was denied. We uphold the ruling of the trial court.

---

[4]Appellant also fails to point out which statements from this second interview were allegedly harmful and why. The first and second interviews contained substantially similar statements. Appellant does not complain on appeal of the admission into evidence of the first interview.

None of the four general custody situations outlined by the Court of Criminal Appeals apply to the recorded interview of which Appellant complains. During the suppression hearing, the State presented testimony from Investigator Rodriguez that, at the time of the second recorded interview, Appellant voluntarily spoke with the investigator, was not in custody, and was not under arrest. Investigator Rodriguez further testified that he informed Appellant that he was "free to leave at any time and that he wasn't under arrest[,] and he could speak to [Investigator Rodriguez] at his own free will." The first, second, and third custodial circumstances set out in *Wexler* require the suspect to be deprived of his freedom, informed that he cannot leave, or be in a situation where a reasonable person would believe that their freedom of movement was significantly restricted. *See Wexler*, 625 S.W.3d at 167−68. Investigator Rodriguez's statements indicate quite the opposite of all three otherwise custodial circumstances. Appellant testified at the suppression hearing and indicated that he voluntarily went to Investigator Rodriguez's office after he was bonded out for an arrest that was unrelated to the murder case.

Appellant argues on appeal that Investigator Rodriguez had probable cause to arrest him at the time of the second recorded interview[5]—implicating the fourth *Wexler* circumstance of custody. When probable cause for arrest has been established, it does not necessarily establish custody. Even though Investigator Rodriguez had probable cause to arrest Appellant during the interview, Appellant was informed that he was not under arrest, and he was in fact allowed to leave after the interview. Comparatively, the surrounding facts and circumstances of the second interview differ from those of the first interview, which was custodial in nature. Appellant had just been in custody and was read his *Miranda* rights not twenty-four

---

[5]The State concedes on appeal that there was probable cause to arrest Appellant during the second interview with Investigator Rodriguez.

hours before the second interview. After experiencing both circumstances so close in time, the trial court was within its discretion to conclude that Appellant understood that he was not under arrest during the second interview. Importantly, Appellant was explicitly told that he was not under arrest and that he would be free to leave that day. Finally, by his own admission, Appellant participated in the interview voluntarily. These cumulative circumstances support the trial court's conclusion that Appellant did not believe his movements were restricted to the degree associated with an arrest when he spoke with Investigator Rodriguez a second time. A reasonable person in Appellant's situation would not believe his freedom had been restricted to the degree associated with an arrest, nor that he was in custody.

While the parties have not argued the case, we distinguish the recent decision of *State v. Lujan*, 634 S.W.3d 862 (Tex. Crim. App. 2021), where three recorded statements, taken while she was under arrest and in custody, were made by Lujan. Lujan's second statement was made in a police vehicle while en route to search for the victim's body, and the statement was suppressed by the trial court. The recording of that statement was made on an iPad activated before Lujan got into the law enforcement vehicle. *Lujan*, 634 S.W.3d at 866. For reasons specifically set out with facts detailed in the opinion, Lujan was "misled" to believe that the statement in the vehicle would not be used against her. *Lujan*, 634 S.W.3d at 865–867.[6] We must defer to the trial court's reasonable findings set out above in denying the suppression motion. Simply stated, unlike in *Lujan*, Appellant's second interview was voluntary and did not occur while he was under arrest or in custody, and there

---

[6]For purposes of our review, it is important that the trial court in *Lujan* ruled that suppression of the statement was warranted; but here, the trial court denied the suppression. The standard of review is to view the evidence in the light most favorable to the trial court's *ruling*. We cannot "perform [our] own fact-finding mission, but" should confine "factual review to determining whether the trial court's findings were reasonable in light of the evidence presented." *Lujan*, 634 S.W.3d at 865 (quoting *Hereford v. State*, 339 S.W. 3rd 111, 118 (Tex. Crim. App. 2011)).

is no evidence of Appellant having been misled as to the nature or use of that interview.

We uphold the trial court's ruling that Appellant was not in custody at the time of the second interview and that his constitutional rights were not violated by the lack of *Miranda* warnings. The trial court did not err in denying the motion to suppress. Appellant's first issue is overruled.

*Issue Two: Double Jeopardy—Punishment*

In his second issue, Appellant claims that the two convictions for murder and felony murder violated the Fifth Amendment's Double Jeopardy Clause. The State concedes that a Fifth Amendment violation exists. Because the charges involve the same level of offense and punishment range, Appellant asks that we either reverse his conviction or order a new trial. The State believes the appropriate remedy is to affirm the murder conviction and vacate the felony murder conviction. We agree.

*Applicable Law*

The Fifth Amendment provides that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The United States Supreme Court has concluded that the Fifth Amendment offers three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *Cavazos*, 203 S.W.3d at 336 (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds* by *Alabama v. Smith*, 490 U.S. 794 (1989)). The Double Jeopardy Clause imposes few, if any, limitations on the legislative power to establish and define offenses. *Ex parte Hawkins*, 6 S.W.3d 554, 556 (Tex. Crim. App. 1999) (citing *Brown v. Ohio*, 432 U.S. 161 (1977)). The legislature, therefore, determines whether offenses are the same for double jeopardy

10

purposes by defining the "allowable unit of prosecution." *Id.* (citing *Sanabria v. United States*, 437 U.S. 54, 69–70 (1978)).

To determine whether there are multiple convictions for the same offense, we first apply the "same elements" test laid out in *Blockburger*.[7] *Bien v. State*, 550 S.W.3d 180, 184 (Tex. Crim. App. 2018). Under the *Blockburger* test, "two offenses are not the same if each provision requires proof of a fact which the other does not." *Id.* (citing *Blockburger*, 284 U.S. at 304). In Texas, we look to the pleadings to inform this test. *Id.* If the two offenses have the same elements, a judicial presumption arises that the offenses are the same for purposes of double jeopardy. *Id.* This presumption can be rebutted by a clearly expressed legislative intent to create two separate offenses. *Id.* If, however, the two offenses do not have the same elements, the judicial presumption is that the offenses are different for double jeopardy purposes and multiple punishments are permitted. *Id.* at 185. This presumption can also be rebutted if it is clear the legislature intended that only one punishment be assessed. *Id.*

The legislature also decides whether a particular course of conduct involves one or more distinct offenses under a given statute. *Id.* For example, the scope of the Double Jeopardy Clause's protection against multiple punishments under the burglary statute depends on ascertaining the allowable unit of prosecution. *Cavazos*, 203 S.W.3d at 336–37. Here, the allowable unit of prosecution for homicides is based on the number of victims involved. *See id.* (citing *Ex parte Rathmell*, 717 S.W.2d 33, 36 (Tex. Crim. App. 1986)). As to these convictions, there was only one victim.

When multiple convictions violate the Double Jeopardy Clause, we retain the conviction for the "most serious" offense and set aside the others. *Cavazos*, 203

---

[7]*Blockburger v. United States*, 284 U.S. 299 (1932).

S.W.3d at 337. When, as here, the degree of the offense and the term of years assessed by the factfinder are the same, we have been instructed to consider the fine assessed and restitution ordered. *See id.* at 338–39. In *Cavazos*, the majority opinion pointed out that *previous* decisions by the Court of Criminal Appeals[8] suggest that "all other factors being equal," the conviction that should be retained is the offense identified on the first jury verdict form. As to *Cavazos*, however, the court specifically declined to address that question. *Id.* at 338–39 n.8.

*Analysis*

Appellant was convicted of two offenses: murder and felony murder. Using the example of "intentional" murder for comparison with felony murder, the Court of Criminal Appeals stated: "The offenses are distinct under *Blockburger* because felony murder requires proof of a felony, which intentional murder does not, and intentional murder requires proof of the culpable mental state of 'intentionally,' which felony murder does not." *Ervin v. State*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999); *see* PENAL § 19.02(b) ("(b) A person commits an offense if he: (1) intentionally or knowingly causes the death of an individual; (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; *or* (3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." (emphasis added)). But that does not end the inquiry. Even if the offenses appear distinct under *Blockbuster*, when it is shown that the legislature

---

[8]The *Cavazos* court cites *Ex parte Cravens*, 805 S.W.2d 790 (Tex. Crim. App. 1991); *McIntire v. State*, 698 S.W.2d 652 (Tex. Crim. App. 1985); and *Ex parte Siller*, 686 S.W.2d 617 (Tex. Crim. App. 1985). *Id.* at 338–39 n.8.

clearly intended only one punishment, multiple punishments constitute a violation of the Double Jeopardy Clause. *See Bien*, 550 S.W.3d at 185.

In this case, it is clear that the legislature did not intend for there to be multiple punishments for the murder of a single individual—despite there being multiple means to violate the statute. *See Ervin*, 991 S.W.2d at 815. This is evidenced by both intentional and felony murder being part of the same Penal Code section, the offenses being alternative means of committing the same violation of "murder," and the offenses carrying the same punishment range. *See* PENAL §§ 19.02(c), 12.32. The Court of Criminal Appeals has held that "variants of murder contained within the same statutory section are the same offense for double jeopardy purposes when the same victim is involved." *Ervin*, 991 S.W.2d at 815. Therefore, we conclude that Appellant's convictions and punishments violate the Double Jeopardy Clause.

When multiple convictions violate the Double Jeopardy Clause, we retain the conviction for the most serious offense only. *See Cavazos*, 203 S.W.3d at 337. Here, Appellant was convicted of murder, as a lesser included offense of capital murder, and he was also convicted of felony murder. Both murder and felony murder are first-degree felony offenses and carry the same punishment range. *See* PENAL §§ 19.02(c), 12.32. Both of Appellant's convictions received the same recommendation for a term of confinement by the jury. Additionally, the fine assessed was the same for each conviction, and no restitution was imposed. Essentially all factors are equal between the two convictions—both as to offense and punishment. All punishment factors being equal, we may, but are not required to, consider which conviction is listed first on the jury form in determining which is to be affirmed. *See Cavazos*, 203 S.W.3d at 339 n.8. The order of submission of the jury forms may be a reflection of which criminal counts that the State considers to be most serious. In that connection, we do not think it improper, all other factors being equal, to weigh which conviction the parties request be retained—here,

13

Appellant expresses no preference but the State requests that we affirm the conviction of murder.

As previously observed, Appellant's murder conviction carries the jury finding of a culpable mens rea[9] which "many, if not all, citizens would say . . . is . . . more serious."[10] *See Cavazos*, 203 S.W.3d at 338; *see also Burwell v. State*, No. 11-12-00351-CR, 2014 WL 6603422, at *2 (Tex. App.—Eastland Nov. 20, 2014, pet. ref'd) (mem. op., not designated for publication) (when no fine or restitution was assessed and all three of the defendant's convictions carried the same punishment, the parties agreed the offense listed first on the verdict form and in the indictment should be retained); *Scroggs v. State*, 396 S.W.3d 1, 17–18 (Tex. App.—Amarillo 2010, pet. denied) (when, on finding a double jeopardy violation, the offense named first in the verdict form was retained). In the charge for Count No. One in this case, the offense of murder was included as the lesser included offense of capital murder, and here we consider the order in which the offenses were charged. The lesser included offense of murder (on verdict form C) preceded that of felony murder (on verdict form E) as presented to the jury. All factors weighed and considered, we retain the conviction of murder. Appellant's second issue is sustained.

### This Court's Ruling

We vacate Appellant's felony murder conviction because it violates the Double Jeopardy Clause. Accordingly, we reverse the judgment of the trial court as

---

[9]The culpable mental state as defined in the trial court's charge states: "[I]ntentionally or knowingly caused the death of an individual, . . ., or by intending to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual."

[10]The Court of Criminal Appeals' full quote in the factual context of *Cavazo*s was as follows: "Determining which offense is 'most serious' may be difficult and may not always be objective. Both murder and burglary of a habitation with intent to commit a felony other than a theft are first-degree felonies and have the same range of punishment, *yet many, if not all, citizens would say that murder is a more serious offense* than burglary." *Cavazos*, 203 S.W.3d at 338 (emphasis added).

to Count No. Two and render a judgment of acquittal as to that count. *See Saenz v. State*, 131 S.W.3d 43, 53 (Tex. App.—San Antonio 2003), *aff'd*, 166 S.W.3d 270 (Tex. Crim. App. 2005). We uphold the murder conviction reflected in jury verdict form C, and we affirm the trial court's judgment as to Appellant's conviction and sentence for the lesser included offense of murder, Count No. One.


W. BRUCE WILLIAMS
JUSTICE


April 6, 2023

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.